The PEOPLE of the STATE of CALIFORNIA, Respondents,
*v.* GEORGE TANNER, Appellant.

On the trial of an indictment for grand larceny, punishable with imprisonment
or death, at the discretion of the jury, a person called as a juror, and accepted
by the prisoner, was asked by the prosecuting attorney, "whether he had any
conscientious scruples against the infliction of capital punishment?" To which
he answered, that he would hang a man for murder, but would not hang him
for stealing.

The Court therefore allowed the prosecuting attorney to challenge the juror for
cause. *Held*, that this was not error.

After judgment affirming a capital conviction, on a petition for rehearing in va-
cation, a justice of this Court ordered the sheriff to stay execution till the
petition could be heard by the Court.

APPEAL from the Tenth Judicial District, Yuba County.
At the April Term, 1852, of the Court of Sessions of Yuba
County, the grand jury found an indictment against Tanner, for
grand larceny, committed on the 3d day of the same April, by
stealing 1500 pounds of flour, six sacks of potatoes, five kegs of
syrup, two and one half barrels of meal, one keg of powder, and
one half barrel of mackerel, the property of Lowe & Brothers,
of the value of $400. On the 14th of the same April, the cause
come on for trial in the Court of Sessions. When empannelling
the jury, the district attorney asked one of the panel, whether
he had any conscientious scruples against the infliction of capital
punishment? To which the juror answered that, "he would
hang a man found guilty of murder, but would not hang a man
for stealing." The Court ruled, that this answer proved implied
bias, and allowed the district attorney to challenge the juror for
that cause. The prisoner excepted. The jury returned a ver-
dict of "Guilty of Grand Larceny, punishable with Death."
The Court sentenced the prisoner to be hung on the 28th of
May, 1852. The prisoner appealed to the District Court, which
Court affirmed the judgment on the 24th of the same April. The
prisoner appealed to this Court.

The cause was argued by *W. Walker*, for the appellant; and
by the *Attorney-General*, for the respondents.

17

Chief Justice MURRAY delivered the opinion of the Court. Upon the trial of this cause, which was an indictment for grand larceny, William Jackson was called as a juror, and accepted by the prisoner. The counsel for the State asked said Jackson, "Whether he had any conscientious scruples against the infliction of capital punishment?" to which said juror replied, "he would hang a man found guilty of murder, but that he would not hang a man for stealing." Whereupon the Court ordered the juror to stand aside, deciding that he was biased, and therefore incompetent. The 9th subdivision of the 347th section of the act regulating criminal proceedings, enumerates, among the causes of challenge for implied bias, "If the offence charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty;—in which case, he shall neither be permitted nor compelled to serve as a juror." The act concerning crimes, provides, that any person found guilty of grand larceny, shall be punished by imprisonment in the State prison, not less than one, nor more than ten years, or by death, in the discretion of the jury. It is not our purpose to discuss the policy of this law, although we regret that our legislature have considered it necessary to thus retrograde, and in the face of the wisdom and experience of the present day, resort to a punishment, for less crimes than murder, which is alike disgusting and abhorrent to the common sense of every enlightened people. In order, however, to correct the administration of the law, and secure a due enforcement of the penalties ordained for its violation, provision has been made by which everything like prejudice, interest, or bias is excluded from the jury box. This provision is not made alone from considerations of humanity for the criminal, but also to protect the majesty of the law. Here the law had attached the penalty of death, as well as imprisonment; and it cannot fail to strike every one, that if the juror could not affix the penalty of death to the crime of grand larceny, he was not in a situation to exercise that discretion, upon a full hearing of the case, which the law contemplated he should possess. By his conscientious scruples or prejudice, a portion of that discretion was cut off; and his verdict could in no case have amounted to more than a sentence of imprisonment. It is contended that the question

was too broad, and that the exact words of the statute must be followed.   The counsel for the prisoner has cited the case of the Commonwealth *v.* Buzzel, 16 Pick. 155, to show that a juror cannot be asked whether the crime set forth ought not to be punished by law, or ought to receive a different punishment from that which the law prescribes.   It is difficult to say, from an examination of the opinion, whether this point was decided by the Court, or not; but admitting it to be sound law, it has little or no application.   It is impossible to separate the verdict from its consequence, the punishment; and the law in making conscientious scruples which render it impossible to find the prisoners guilty, a disqualification, directly contemplates the punishment of such guilt.   There was no attempt here to inquire whether the juror thought the crime ought not to be punished by law, or that a different penalty should have been affixed; but simply to ascertain if he had any conscientious scruples against capital punishment, that being one of the punishments visited by law upon the offender, and resulting as a necessary consequence, in the exercise of a discretion by the jury, from a finding of guilty. It is said that the juror was not disqualified because there are various shades of punishment attached to the crime of grand larceny, and in the language of the statute, he had no conscientious scruples which would have prevented him from finding the prisoner guilty.   It was only from his unwillingness to punish the crime with death that he could be said to be incompetent. The words of the statute are, "*if the offence charged be punishable with death.*"   Here was an offence so punishable. How could a juror be said to be competent who would not affix this punishment?   And if the verdict and judgment are consequent one upon the other, how could finding the prisoner guilty, and affixing a less punishment, cure this incompetency?   The law has ordained that this offence shall be punished with death; and to allow jurors to sit upon a trial for larceny who declared that they would not impose this penalty, would defeat the intention of its framers, and practically work a repeal of its provisions. It would be a mockery of justice to allow or compel a juror to be sworn and placed upon a jury when he declared that his conscience was so at war with a law that he would not, under any

circumstances, consent to the highest punishment provided for a breach of that law, and that his fellow jurors must shape their verdict to his preconceived opinions, he having no discretion in the premises. To admit him, that the opinions of others unprejudiced should bend to his, would be an experiment full of danger and error. It is contended that if the question was proper, the answer of the juror was a negative one, and afforded no cause of challenge. The witness did not say, in so many words, "I have," or "I have not;" but the answer is not the less intelligible for that reason. That the juror had conscientious scruples against the infliction of capital punishment in cases of grand larceny, admits of no doubt. If the juror had answered, that the larceny being proved, it would be a matter of conscience with him to affix the penalty of death to the offence, would any one contend he was an unbiassed juror for the prisoner? And yet the only difference is, that in the one case, he would not inflict the highest, and in the other, the lowest punishment of the law. It is said that this construction will increase the power and number of challenges for cause on the part of the State. Its operation will only be to secure the power which the law intended to intrust to the Courts, and enable them to prevent the administration of justice from becoming a mockery. In view of the whole case, the record not showing that the prisoner has been prejudiced, and no pretence being made that the trial was not properly conducted by a fair jury, we think the judgment of the Court below should be affirmed.

Ordered accordingly.

On the 24th of May, 1852, the prisoner's counsel filed a petition for a re-hearing: and on the next day,—it being vacation,— Justice WELLS made an order, commanding the sheriff to stay execution of the sentence until the 23d day of July, 1852, in order that the application for a re-hearing might be decided by the Court. A copy of the order, certified by the clerk of this Court, was transmitted to the sheriff.

The petition was heard before Justices ANDERSON and WELLS, and overruled July 16th, 1852; and it was ordered that the appellant be executed on the 23d of July, in the manner prescribed

by the original sentence, and that a certified copy of the order be transmitted to the clerk of the Court of Sessions forthwith.
The prisoner was executed accordingly.