11 535
45 1166

## STATE *v.* JOHN MELVIN.

The Act of May 29, 1856, authorizing juries, in capital cases, to qualify their verdicts of guilty by adding " without capital punishment," did not change the pre-existing jurisprudence which held it to be good cause of challenge on the part of the State in such cases, that the juror had conscientious scruples about inflicting capital punishment.

The following bill of exceptions was taken to the charge of the District Judge. " Be it remembered that on the trial of this cause, the Judge, in his charge to the jury, and at the beginning and in the course of his said charge, stated to the jury that cases of murder were fearfully numerous in this city ; that a conviction on a charge of murder had ceased to be a cause of excitement, and had become a common affair of almost daily occurrence ; that confinement in the State penitentiary for life, was no adequate punishment for the crime of murder, and that juries had no right to qualify their verdict unless there were mitigating circumstances ; that convicts in the penitentiary seldom served out their term, when confined there for life ; that a late Governor of this State had pardoned almost every body, and that convicts were always in the hope that after a few years they would appeal to a clement executive, and that none but capital punishment would put a' stop to the practice now common of man and woman killing ; that he, the Judge,. on a late visit to the penitentiary, had been told by parties sentenced by him, inmates of the State prison now; that they hoped in a short time to come out; to which charge the counsel for the defendant objected, &c." *By the Court :* It is obvious that the charge as above detailed embraced several matters of fact within the personal knowledge of the Judge, which would not have been admissible in evidence, had they been offered on the trial, which did not contribute in any way to the elucidation of the law applicable to the case, and which yet had a tendency to influence the finding of the jury by motives extraneous to the cause before them.

Under the statutes of this State, the Judge should carefully avoid giving the jury any indication of his own opinion touching the facts of the case, or the guilt, or innocence of the prisoner.

The qualification· of the verdict in capital cases should be left where the law has left it, to the sound discretion of the jury, upon the facts of the case, guided by a sense of their solemn responsibility—which is to do their whole duty to the State as well as to the accused.

APPEAL from the First District Court of New Orleans, *Robertson*, J. *Morse*, Attorney General.

*Saucier*, for appellant :

It is contended that, when the prisoner has accepted a juror tendered to him by the State, and the juror is sworn, that juror becomes one of his judges and can not be taken from him.—He is one of a branch of the Court. The State having once waived the right to enquire into the qualifications of a juror, upon the voir-dire examination, before presenting him to the accused, waives with it every objection which it might have urged to the juror. 2 Bay's Rep. 155. Graham on New Trials. State v. *Kennedy*, 8 Rob. Rep. 596.

In the case of the *State* v. *Cummings*, 5 Annual Rep. 332, wherein the objection was merely that the State had challenged a juror, after he had been accepted by the accused, but before he was sworn, this court said : " It seems to us most proper that the State should first exercise the right of challenge, for cause or peremptorily, and present the juror to the accused as a good and lawful juryman ; that the accused should then exercise his rights, and that the State should not be allowed to challenge, after the juror has been accepted by the prisoner.

STATE
*v.*
MELVIN.

But the rule for which counsel contends, namely, that the State is not allowed to challenge a juror after he has been sworn, is laid down in all the books. "The King can not challenge a juror after he is sworn, unless it be for a cause arising after he is sworn." Trials per Pais, page 190. 1 Chitty, 545–546. Hawkin's Pl. of the Cr. v. 2, page 568. Graham on New Trials, ch. 2, under the head, "For irregularity in empannelling the jury" :—"If a juror be formerly sworn, if he be challenged, he must shew cause presently, and that cause must rise since he was sworn. 3 Thomas' Coke, p. 524." It is indeed useless to cite further authority on this point: it is supported by every work that treats of the trial by jury."

The court claims the power, in order to "attain" and "maintain justice," to order jurors to stand aside, even after they have been sworn, and for a cause that existed before they were sworn. It is submitted that the court has no such power, and that the best way to "attain" and "maintain justice" is to follow the rules and forms of the law.

But assuming that the objection to the two jurors, set aside in this case, was not too late, the defendant contends that it is not valid. They were ordered to stand aside, because they were opposed to capital punishment. Now, sentence of death does not necessarily follow conviction on a charge of murder; another punishment is provided by law; namely, confinement at hard labor, in the penitentiary, for life, when the jury return a qualified verdict, i. e. "Guilty without capital punishment," which it is lawful for them to do in all cases, where the punishment denounced by law is death. (Acts of 1846, No. 139, p. 118.) The said jurors were then "good for the State," and should not have been discharged from the consideration of the case.

As to the point embodied in bill of exceptions, marked B, that the Judge *a quo* admitted, in evidence against the accused, the dying declarations of the deceased, when it appeared in evidence that she was not, at the time of declaring, in a condition to realize the sense of impending dissolution, which is supposed in law to supply the place of an oath, it is submitted to this court, on citing Greenleaf on Ev. 156, 157, 158.

Again, the Judge said to the jury that they had no right to qualify their verdict, unless there were mitigating circumstances in the case. The law says: "That in all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto "without capital punishment." Acts of 1846, p. 118. The judge, in an addition to the bill under consideration, says he did not say that the jury had no right to qualify their verdict, unless there were mitigating circumstances in the case, but that he said "it was not right to qualify their verdict, &c." Counsel is confident that, on examining the record on this point, this court will take the facts to have been as stated in the body of the bill.

SPOFFORD, J. An unqualified verdict of guilty having been found against the prisoner, under an indictment for murder, he was sentenced to death.

Having appealed to this court, he seeks to reverse the sentence and to procure a new trial, for various alleged errors in the proceedings below.

We are of opinion that the Act of May 29, 1846, authorising juries, in capital cases, to qualify their verdicts, by adding "without capital punishment," has not changed the pre-existing jurisprudence which held it to be good cause of challenge on the part of the State, in such cases, that the juror had conscientious scruples about inflicting the punishment of death. *The State* v. *Kennedy,* 8 Rob. 594. If the Legislature intended to change the law in this respect, such intention should appear by necessary implication from the statute itself.

The statute allows jurors, in a specified class of cases, to render a verdict in two forms; if they have conscientious scruples against either form, they cannot carry into effect the whole law, and therefore do not stand indifferent between the State and the accused.

But, while we do not think the court erred in allowing their challanges for cause, we find error, which may have prejudiced the prisoner, in that portion

of the Judge's charge to the jury, which is embodied in the following bill of exceptions: "Be it remembered that on the trial of this cause, the Judge, in his charge to the jury, and at the beginning and in the course of his said charge, stated to the jury that cases of murder were fearfully numerous in this city; that a conviction on a charge of murder had ceased to be a cause of excitement, and had become a common affair of almost daily occurrence; that confinement in the State Penitentiary for life, was no adequate punishment for the crime of murder, and that juries had no right to qualify their verdict unless there were mitigating circumstances; that convicts, in the penitentiary, seldom served out their term when confined there for life; that a late Governor of this State had pardoned almost every body, and that convicts were always in the hope that, after a few years, they would appeal to a clement executive, and that none but capital punishment would put a stop to the practice now common of man and woman killing; that he, the Judge, on a late visit to the penitentiary had been told, by parties sentenced by him, inmates of the State Prison now, that they hoped in a short time to come out; to which charge the counsel for the defendant objected, &c."

It is obvious that the charge as above detailed, embraced several matters of fact within the personal knowledge of the Judge, which would not have been admissible in evidence, had they been offered on the trial, which did not contribute in any way to the elucidation of the law applicable to the case, and which yet had a tendency to influence the finding of the jury by motives extraneous to the cause before them.

If there could be a doubt under the English common law, with regard to the propriety of such a charge in a criminal case, the legislative enactments of Louisiana would compel us, however reluctantly, to say that it was erroneous. The Act of April 30, 1853, (Sess. Acts, p. 249,) declares "that in his charge in criminal cases, the Judge must limit himself to giving the jury a knowledge of the law applicable to the cause submitted to them." And the Act of May 29, 1846, (Sess. Acts, p. 118,) had previously declared "that in all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto "without capital punishment," and that whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall only be sentenced to hard labor for life, in the State Penitentiary."

Under these statutes, the Judge should carefully avoid giving the jury any indication of his own opinion, touching the facts of the case, or the guilt or innocence of the prisoner.

And the qualification of the verdict should be left where the law has left it, to the sound discretion of the jury, upon the facts of the case, guided by a sense of their solemn responsibility, which is to do their whole duty to the State as well as to the accused.

We are not insensible to the public evils, deprecated by the District Judge, and which naturally provoked the strong expressions contained in his charge.

But we are sitting as Judges, to apply the laws as they are to a particular controversy, growing out of facts, not as legislators to originate and prescribe general rules for the future. If existing laws are found to work badly, the remedy is to be sought at the hands of the power which enacted them. Whilst they remain upon the statute-book, they must be obeyed by the courts without reference to their expediency.

68

It is, therefore, ordered that the judgment of the District Court, in the case of the *State* v. *John Melvin*, be avoided and reversed, the verdict of the jury set aside, and the said cause remanded for a new trial, according to law.