The opinion of the court was delivered by
McEnery, J.
The defendant was indicted for murder, tried, con- ■ victed of manslaughter and sentenced to hard labor. His motion in arrest of judgment was sustained and the State appealed.
The defendant relies upon the motions to quash the iudictment, in *1165 arrest of judgment, for a new trial, and several bills of exceptions to the rulings of the trial judge in the course of the trial.
The motion to quash the indictment assigns as reasons therefor that one member of the jury commissioners had not qualified by taking the required oath, and that if the commissioner had been drawn the oath had not been reduced to writing, subscribed and recorded. Testimony was heard on the trial of the motion and bill No. 1 is reserved to the ruling of the district judge in allowing the introduction of parol testimony to show that the jury commissioners had qualified. The oath of the commissioners could not be found among the records in the clerk’s office, and it had not been recorded. The fact of the loss of the oath had been proved. The testimony shows conclusively that the commissioner had been sworn by the clerk. The clerk states that he reduced the oath to writing, and that it was signed by the commissioner.
The latter swears to the taking of the oath, but does not positively recollect having signed it.
He says: “I have no recollection of signing it, but do not dis tinctly recollect that I did not sign it.”
Act 44 of 1877 does not require that the oath shall be reduced to writing and recorded. The evidence of the selection and appointment of the commissioner's required to be entered upon the minutes of the court, and the commissioner is required to take an oath before the drawing of the jury — that is, before he enters upon the discharge of his duty.
There can be no question as to the propriety of its being reduced to writing, subscribed by the commissioner and recorded. This is the duty of the clerk and it is imperative, although not expressed in positive terms in the act. But the clerk’s omission can not work a public injury. The fact of the qualification of the commissioner is alone the test of his ability to serve. The omission of the clerk in permitting or allowing the disappearance of the record can not destroy the fact of the qualification of the commissioner.
On the proof of the loss of the oath, it was competent to prove by parol the fact of the commissioner having qualified. The trial judge very aptly says “to hold otherwise, an interregnum or suspension of power in any department of goverment could be brought about at any time by a careless custodian of public records.”
Bill of exceptions 2. Tobe Leveart was presented as a juror and *1166 was asked by the district attorney if he was opposed to capital punishment. He answered that'he had no scruples to the infliction of capital punishment; that on proper evidence he would render a verdict that would inflict the death penalty. But in answer .to questions propounded by the trial judge, who explained to him that he would have the right to qualify his verdict, he stated he “would always qualify his verdict, and would not hang any man if he could help it.” The juror was peremptory challenged by the district attorney, which was sustained by the court. The juror was not competent. Section 1000 of the Revised Statutes, which authorizes a jury in capital cases to bring in a qualified verdict, “Guilty without capital punishment,” was not enacted to satisfy the scruples of jurors in the infliction of capital punishment. It was intended, if extenuating circumstances justified it, to authorize the jury to qualify the verdict, being in this respect similar to the grade of the offence of murder in other jurisdictions, known as murder in the second degree. 11 An. 535, 685; 30 An. 367; 38 An. 480.
Bill No. 3. A witness was sworn for the defence and interrogated as to the turbulent and dangerous character of the deceased. From the statement of the trial judge it appears that no overt act had been committed by deceased against the defendant. Testimony had been introduced to show an overt act of hostility of deceased against defendant, but the trial judge believes that no such demonstration had been made. In this matter he is clothed with a sound legal discretion, and there is no reason assigned why we should disturb his ruling. State vs. Ford, 37 An. 461; State vs. Nash and Barnett, 45 An. —, recently decided.
The testimony shows that the witness only knew of the reputation of deceased for violent and turbulent disposition, which was of a dangerous character, in the State of Mississippi, and knew nothing of his reputation in Louisiana in the neighborhood in which defendant and deceased resided.
In the case of the State vs. Nash and Barnett we ruled that the reputation of the deceased in a distant community, not brought to the knowledge of the defendant, was inadmissible testimonj’’. 45 An.
Bill No. 4. The defendant, who was sworn in his own behalf, was asked why he carried the gun to the ground, and-he answered he had heard of threats of deceased against him; and at the same time *1167 other witnesses were offered to prove communicated threats of deceased against accused. This testimony was rejected by the trial judge on the ground that no overt act of hostility of deceased against accused had been shown as a necessary foundation for the receiving of evidence of communicated threats. This ruling is in line with the uniform rulings of this court. State vs. Ford, 37 An. 461; State vs. Harris, 45 An.; State vs. Nash and Barnett, 45 An.
Bill No. 5 is disposed of for the reasons assigned in reviewing bills 3 and 4.
The grand jury who returned the bill against the defendant summoned before them several parties and permitted others to visit them on business directly connected with the official duties of the grand jury. They in no way were connected or interested in defendant’s case and they were not interrogated in reference to it, and nothing was said or done by the grand jury while these parties were before them in reference to the case of defendant. The case of the defendant was in no way prejudiced against him, and it is difficult to see in what manner he was injuriously affected.
It is complained by the defendant that one S. A. Morgan, the leading State witness, went without summons or request before the grand jury and gave his own version of the case against defendant, and instituted this prosecution. The witness had the undoubted right to go before the grand jury voluntarily and' disclose his knowledge of facts in the the case. As a good citizen it was his duty to do so. No one can be excused for withholding knowledge of a crime from the public until he is summoned to give his testimony of its commission. The record does not show that there was any misconduct on the part of the grand jury. On the contrary, the trial and conviction of the defendant is an evidence that they acted with a due regard for the public safety in presenting the indicoment against him.
The defendant was arraigned and pleaded not guilty. Subsequently this plea was withdrawn, and a motion to quash the indictment was filed. The withdrawal of the plea of not guilty placed the defendant in the position as though he had never pleaded to the indictment. He was not subsequently arraigned, and he was tried and convicted without any issue between him and the State. This is fatal to the verdict. The defendant must plead personally to the indictment, and this absolute requirement must be observed and the record must show it. State vs. Hunter and Frank, 43 An. 157.
*1168 The omission to plead to the indictment was taken advantage of by the defendant in a motion in arrest of judgment. It must prevail.
Judgment affirmed.