## ATTITUDE OF JUROR WITH REFERENCE TO RECOMMENDA- TION TO MERCY.

Circuit Court of Cuyahoga County.

ANTONIO MANGANO V. STATE OF OHIO.

Decided, May 11, 1910.

*Criminal Law—Qualification of Juror Who States He Would Not Recommend to Mercy.*

A proposed juror in a first degree murder case, who, in answer to a question by the prosecuting attorney as to what his mental attitude would be toward a recommendation to mercy, if he should be clearly of the opinion, after hearing the evidence, that the accused was guilty of the crime charged against him, states that under the circumstances described in the question he would not recommend the accused to mercy, may be challenged for cause, but if not so challenged, a verdict of guilty without recommendation to mercy will not be reversed because such juror served in the case.

*P. L. A. Lieghley* and *W. H. McMorris,* for plaintiff in error. *John A. Cline* and *Walter D. Meals,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Mangano was convicted of murder in the first degree on a trial in the court of common pleas. We are asked to reverse the judgment because of certain questions which were asked of and answered by the jurors on the *voir dire.*

The question substantially put to each of the jurors, about which complaint is made, was the one propounded to juror Kelley, and that reads:

"Supposing that you were clearly of the opinion after hearing the evidence, that the defendant and his wife had some words, perhaps a quarrel, and that he killed her, and that having killed her he then made an attack upon one of her children, a boy about nine years old, and killed him, and having killed

him he made an attack upon the girl about eleven years old and killed her, and then made an attack upon a boy about two years old, stabbed it and thought he had killed it, gathered up some clothes about the place, wiped up some of the blood he had spilled and put the clothes that he had picked up in the stove, cloths or whatever they were, and then ran away and was later apprehended in the city of Akron and brought back here, suppose that while he did this you are satisfied that he was in full possession of his mental faculties, what would be your mental attitude concerning a recommendation of mercy?''

This question was answered by several jurors to whom it was put, that under the circumstances named in the question they would not recommend the prisoner to mercy.  The complaint is urged here that after having so answered this question each juror making such answer pledged, if he returned a verdict of guilty, to withhold any recommendation to mercy, and we think this is practically true.

It was suggested by counsel for the state, in argument, that the statute which provides that the jury may recommend one convicted of murder in the first degree to mercy, upon which recommendation the punishment is fixed at imprisonment for life instead of being capital, was enacted so that where there was some doubt on the part of the jury as to the guilt of the accused, the jury might, by recommending the accused to mercy, relieve themselves from something of the responsibility which would result from a simple verdict of guilty.  We think this is a mistaken understanding of the purpose of the statute.  It was not designed that any less degree of evidence should be required to convict of murder in the first degree, because of this statute, than was required before the enactment of said statute.  Before a verdict of guilty can be rendered under the statute as it is now (and as it was previous to the enactment of this statute), the provision as to a recommendation of mercy requires the state first to satisfy the jury beyond a reasonable doubt of the guilt of the accused.  It would not do to say that the jury may relieve themselves from responsibility in finding one guilty of murder in the first degree upon less evidence than has always been required, by having the opportunity to recommend the

prisoner to mercy. It seems to us clear that one answering this question unqualifiedly in the affirmative so committed himself on this question of mercy as not to be at liberty to act. All of the facts stated in this question might exist and a juror might still feel that his duty required him to make a recommendation of mercy. Indeed, all of the facts might exist, as stated in the question, and still a juror not be warranted in finding the prisoner guilty of murder in the first degree. The language is, as already quoted: ''Supposing you were clearly of the opinion after hearing the evidence, that the defendant and his wife,'' etc. One may be clearly of the opinion that a fact exists and still that fact may not be established with that degree of certainty that is required to convict a prisoner of crime. One may be clearly of the opinion that a fact exists and still entertain some doubts about its existence. But aside from this, and assuming that what is meant by the words ''clearly of the opinion'' is ''satisfied beyond a reasonable doubt,'' still facts might be developed on the trial that would make it proper that there be a recommendation to mercy. At least, that might lead unprejudiced men to recommend to mercy.

Supposing that at the time of the trial the prisoner was dying of some malignant disease, that it was clear that within the next six months he must die from such disease, might not a conscientious juror, who had no doubt from the evidence as to the guilt of the prisoner, recommend him to mercy, for the sake of saving him from capital punishment? Other reasons for such recommendations will readily suggest themselves, and yet these jurors, when they answered this question as they did, committed themselves to the proposition that in no event, were the facts as stated in the question, would they recommend to mercy. We think it was a mistake on the part of the counsel for the state to feel called upon to ascertain what the views of the jurors were upon this question. It was stated in argument, by counsel for the state, that since the enactment of the statute allowing a recommendation to mercy there have been no persons executed for murder committed in this county, notwithstanding there have been a number of convictions for murder in the first degree.

We think there may be grave doubt as to whether the prosecuting attorney or any other citizen should feel great humiliation or great regret, that this fact exists. In any event, we feel that the question of the recommendation to mercy should be left entirely to the jury, without any suggestion on the part of counsel for the state in the first instance. But we are further of the opinion, and hold, that since no objection to any one of these jurors was made upon the ground of the answer which he had made to this question, it is too late now to make the question.

From what has been said in the opinion it is clear that we think that the juror who had answered this question as it was answered might have been successfully challenged for cause by the prisoner. Not having been so challenged, we hold that the question can not be made in the case now.

The view here taken is sustained, as we think, not only by reason but by the case of *State* v. *Stewart*, 45 La. Annual, 1164, the last of the syllabus of which reads:

"A juror who on his *voir dire* states that he would qualify his verdict in all capital cases, is an incompetent juror to serve on a jury in a case where the defendant is charged with murder."

And in the opinion, this language is used:

"Tobe Leveart was presented as a juror and was asked by the district attorney if he was opposed to capital punishment. He answered that he had no scruples to the infliction of capital punishment; that on proper evidence he would render a verdict that would inflict the death penalty. But in answer to questions propounded by the trial judge, who explained to him that he would have the right to qualify his verdict, he stated he 'would always qualify his verdict, and would not hang any man if he could help it.' The juror was peremptorily challenged by the district attorney, which was sustained by the court. The juror was not competent.

"The statute which authorizes a jury in capital cases to bring in a qualified verdict, 'guilty without capital punishment,' was not enacted to satisfy the * * * scruples of jurors in the infliction of capital punishment. It was intended, if extenuating circumstances justified it, to authorize the jury to qualify the verdict."

The judgment is affirmed.