[No. 7103.]

## DEMATO v. THE PEOPLE.

1. *Criminal Law—Juror—Opinion as to Capital Punishment — Challenge —* One who, being called as a juror upon the trial of an indictment for willful murder, and examined on the voir dire, answers that if accepted as a juror he would under no circumstances consent to the imposition of the death penalty, is not a competent juror, and a challenge for cause is properly sustained.—(149)

2. *——Summoning Talesmen—*The sustaining of proper challenges, thus exhausting the regular panel, and the subsequent summoning of talesmen by open venire, is not error.—(152, 153)

3. *——Harmless Error—*The exclusion of testimony admissible only to acquit the prisoner of malice or premeditation,

is harmless, where the same testimony was brought out during the further, or previous examination of the witness.—(153)

4. ——Instructions—Not Applicable to the Evidence—Where, upon the trial of an indictment for murder, the evidence shows that the prisoner is either guilty as charged, or is innocent of any crime, instructions as to the grades of manslaughter are properly refused.—(155)

5. Murder — A private person who, without any excuse or justification, in order to accomplish the arrest of another not shown to have been guilty of any crime, shoots, merely intending to wound, is guilty of murder if the shot takes fatal effect.—(155, 156)

*Error to Pueblo District Court*—Hon. C. S. ESSEX, Judge.

Mr. WILLIAM J. KERR for plaintiff in error.

Hon. JOHN T. BARNETT, attorney general, and Mr. GEO. H. THORNE for the people.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error (defendant below) was convicted of murder in the first degree, and sentenced to the penitentiary for life. He brings the case here for review on error.

Three of the persons called as jurors answered upon their *voir dire* to the effect that if they should be retained as jurors, and should find the defendant guilty of murder in the first degree, they would under no circumstances impose the death penalty. Based upon these answers, the People interposed challenges which were sustained. The statute provides that "* * * The jury before which any person indicted for murder shall be tried, shall, if it find such person guilty thereof, designate by its verdict whether it be murder of the first degree or second degree; and if murder of the first degree, the jury shall in its verdict fix the penalty to be suffered by the person so convicted, either at im-

prisonment for life at hard labor in the penitentiary, or at death, and the court shall thereupon give sentence accordingly. * * * ''—Sec. 1624 Rev. Stats.; sec. 1176, 3 M. A. S., Rev. Supp.

The juror's oath prescribes his duty. By the obligation thus imposed, he is to well and truly try the issues joined and a true verdict render according to the law and the evidence. The law-making power of the state, namely, the general assembly, has provided that capital punishment may be inflicted for murder in the first degree, when the jury finding such verdict so determines, or life imprisonment, in the discretion of the jury. In other words, under the law, it is the bounden duty of the jury convicting one of the crime of murder in the first degree to exercise their descretion in fixing the penalty to be imposed. To follow and uphold the law is the duty of courts and juries. Manifestly, one who says he would not exercise the discretion vested in him by law, by declaring under oath that he would not fix the death penalty in a proper case, cannot discharge the duties which his oath prescribes. It would certainly be an anomaly to impose upon a juror the obligation of an oath which he says he will disregard. Clearly, such a person is disqualified to act as a juror in a murder case, for the reason that his attitude on the subject of capital punishment would prevent him from performing his duty in the due administration of the law. He would not carry into effect the whole law, and therefore would not stand indifferent between the state and the accused.—*State v. Melvin,* 11 La. Ann. 535; *State v. Stewart,* 45 La. Ann. 1164; *People v. Majors,* 65 Cal. 138; *Driskill v. State,* 7 Ind. 338; *Stratton v. The People,* 5 Colo. 276; *Spain v. State,* 59 Miss. 19; *Rhea v. State,* 63 Neb. 461; *People v. Tanner,* 2 Cal. 257; *Gross v. State,* 2 Ind. 329; *Greenley v. State,* 60 Ind. 141.

Some of these authorities are based upon statutory provisions, to the effect that if the offense for which the accused is being tried is punishable with death, any person entertaining such conscientious opinions as would preclude his finding the defendant guilty was not competent as a juror; but where such a statutory provision exists, the decisions are not based upon them alone, but, rather, upon the broad proposition that one who would refuse to obey the law, or be guided by its requirements, is not a competent juror. To give the accused the right to have jurors who will not consent to the penalty of death, when the law provides for such a penalty, is to preclude the punishment the law has fixed, and to make the law itself an instrument to defeat its own execution. The law permitting jurors to fix the punishment at death or life imprisonment was not enacted for the purpose of allowing a juror to satisfy his scruples against inflicting capital punishment, but in order, when a verdict of murder in the first degree is returned, to fix the punishment from the circumstances attending the commission of the crime. Many persons are conscientiously opposed to capital punishment, but as the statute prescribes it may be inflicted in a proper case, the law cannot be nullified by permitting those to serve as jurors who refuse to execute it. If capital punishment is to be abolished, the remedy lies with the legislative branch of the state government.

A number of cases are cited by counsel for defendant which he claims support his contention on the subject of challenge for cause. We think these cases are distinguishable from the one at bar, but if they hold differently from our conclusion on the question under consideration, we decline to follow them.

The decision in *State v. Lee*, 60 N. W. 119, an

Iowa case, seems to be based, in part, at least, upon the ground that the criminal code did not embrace challenges for cause predicated upon the ground that a juror entertained conscientious scruples against the infliction of the death penalty. It will be noticed in that case the juror stated, in effect, that he could not conscientiously agree to a verdict fixing the death penalty, but did not say he would not.

*State v. Dooley,* 57 N. W. 414, is another Iowa case, in which it was held that the state may examine a person summoned as a juror in a murder case concerning prejudice against the death penalty for the purpose of peremptory challenge, though the jurors are required to fix the punishment at either death or imprisonment for life upon a verdict of guilty of murder in the first degree, and such prejudice is not a ground of challenge for cause. If the inquiry is material for any purpose, it ought to be competent for all.

In *People v. Stewart,* 7 Cal. 140, a juror was asked if he entertained such conscientious opinions as would preclude him from finding the defendant guilty when the offense charged was punishable by death, to which he replied that he was opposed to capital punishment on principle. It was held that from this answer it could not be said the juror would refuse to obey the law.

In *Atkins v. The State,* 16 Ark. 568, it was held that a person who was opposed to capital punishment is not disqualified as a juror unless it appeared from his answers that he would not find a person guilty of an offense punishable with death.

The decision in *State v. Garrington,* 76 N. W. 326, a South Dakota case, appears to have been based upon the proposition that under the criminal code of that state, entertaining conscientious scruples against inflicting the death penalty did not disqualify

one from sitting as a juror in a capital case. If the criminal code of the state is susceptible of that construction, then, of course, the decision is right. It will be noticed, however, that the jurors interrogated on the subject did not answer that they would not inflict the death penalty.

Independent of some controlling statutory provision on the subject, we cannot see how one called as a juror can be said to be competent when he unqualifiedly answers that he will not obey the law which may be applicable to the case.

As was well said in the Atkins case, *supra:* "Whatever may be a man's views of capital punishment, as a question of policy, the jury box is not a proper place for him to consider such policy. There he is obliged by his oath to try the guilt or innocence of the accused according to law and evidence, and not to set up his own private opinion against the policy of the law, which he is bound, as a good citizen, to abide by and administer so long as it is in force and until it is repealed by the constituted authority."

It is next urged that the court erred in failing to have the panel of jurors, when the regular panel was exhausted, filled by names drawn from the box instead of by an open venire. In support of this contention it is argued that the accused in murder trials is entitled to be furnished with a list of the panel of jurors by which he is to be tried, and a depletion of that list so that resort to talesmen is made necessary by the action of the court in improperly sustaining challenges is an infringement of that right. If, under the law with respect to summoning juries as it now stands, that question can be raised, it is clear that in the circumstances of this case it cannot be. It does not appear that the trial court depleted the regular panel on insufficient

grounds, by erroneously sustaining challenges for cause on the part of the People. On the contrary, as we have just determined, the court was right in sustaining challenges for cause, for the reason that the jurors thus excused were disqualified.

The defendant claimed that he had been employed by Newman & Heiss as a watchman at their slaughter-house, and was to be paid by them for catching any person stealing from their premises. He was not an officer. In attempting to arrest or take into custody, he took the life of the person whom he is charged with killing. The defendant sought to show by the testimony of Heiss that he had employed him as a watchman, to make arrests of persons found committing thefts and burglaries in and around his slaughter-house, which testimony was refused. If this testimony was competent for the purpose of showing, as counsel for defendant urge, that the killing was not attended with malice aforethought, premeditation or deliberation, it was brought out fully during the further or previous examination of the witness; so that the defendant is not in a position to complain.

The defendant testified that on the day of the homicide he heard two shots in the near vicinity of the slaughter-house; that he was told by one of his employers to go and see if some one was shooting at the pigs; to get his gun and if he caught the party doing the shooting, to bring him in. He then states that he went over to where he heard the shots, and found fresh tracks, which he followed two or three hundred yards, when he saw a young fellow take a shot at the pigs; that he called to him, when he started to run; that he ran after him and overtook him; that the party he was pursuing leveled his gun at him, with both cocks up; that he, the defendant, said: "Don't shoot; I want to speak to you;" that

the party he was pursuing walked backwards with his gun up and pointed towards him; that he struck the gun and it went off, to the right of his face; that the party whom he was pursuing then started to run; that he fired over his head and told him to stop, but he would not; that when he was about twenty feet away he fired the first shot, but did so merely to stop him, not intending to hit him; that the party he was then pursuing jumped into the river and ran quite a distance. He then continues his testimony (quoting from the abstract): "At the time I shot the last time he had his gun in both hands, and was looking backwards, and I thought he was going to fire again at me, and I fired at him. I shot to hit him in the leg, but he stumbled and kinder fell, and the bullet struck him here, instead of in the leg. I did not intend to kill him. I only wanted to take him and turn him over to the police officers, because Mr. Heiss told me to bring him back."

The defendant requested instructions on the different grades of manslaughter, which were refused. This, it is claimed, was error, for the reason that there was evidence of an affray between the parties in which the gun of the deceased was discharged at or towards the defendant; and for this reason, it is claimed, the jury might have justified the shooting of the deceased. We do not think there was an affray, or if there was, it had ended when the fatal shot was fired. The defendant had assaulted the deceased, or at least, attempted to take him into custody without any authority. The deceased had not committed any crime, and if, in order to defend himself against the unwarranted attack of the defendant, he intentionally discharged his gun at him, he was merely defending himself, or if this action of deceased could be said to be an

affray, that was the end of it, as, according to the testimony of the accused, the deceased turned and started to flee. If, from the testimony, it could be claimed that after the deceased had crossed the river, he made such a hostile demonstration as would have justified the accused in firing at him in self-defense, then the court was right in refusing the instructions on the subject of manslaughter, because if the defendant was justified in shooting the deceased in order to save himself, then he was guiltless and should have been acquitted; but if not so justified, then, taking the life of the deceased was murder, so that whichever view of the case might be taken, manslaughter was not involved. If, from the testimony we have considered, the defendant was entitled to any instruction, it was on the subject of self-defense; but none was requested. It is well settled that in a prosecution for murder where there is no evidence from which a jury would be justified in finding the defendant guilty of manslaughter, a trial judge is not required to instruct upon that grade of homicide.—*Mow v. People,* 31 Colo. 351; *Crawford v. People,* 12 Colo. 290; *Carpenter v. The People,* 31 Colo. 284.

It is also urged that because the defendant testified he only intended to shoot deceased in the leg so he might effect his arrest, that the instruction on manslaughter should have been given. In the circumstances of this case, this contention is without merit. It does not appear that deceased had committed any offense. According to the statement of defendant, he voluntarily fired the fatal shot. He was not an officer. He was without authority to arrest the deceased; consequently firing with intent merely to wound so as to effect his arrest was not justified. If one shoot another with the intent only to cripple him, but kills, and there is no excuse or

justification for the shooting, such killing is murder. In these circumstances, the law holds the slayer responsible for the consequences of his act; not the consequences which might have ensued, but those which did ensue.—*Stovall v. The State,* 106 Ga. 443.

Other errors assigned, but not argued in the brief of counsel for defendant, were urged upon our attention at the oral argument, which we think unnecessary to consider. According to the testimony of the defendant, it is clear beyond dispute that he fired the fatal shot without any excuse or justification whatever, and hence, was guilty of murder; consequently, if, technically, errors were committed by the trial court, they did not prejudice the rights of the accused.

The penalty imposed is severe, but he was guilty of taking a human life, without excuse, and it was the exclusive province of the jury to fix the penalty of his crime under the verdict returned. The severity of the punishment is not a matter for our consideration. The law has provided where appeals for clemency must be addressed.

The judgment of the district court is affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.