[No. 4500.]

### CARPENTER ET AL. v. THE PEOPLE.

1. **Practice in Criminal Cases—Juries—Peremptory Challenges.**
    Where two or more defendants are jointly tried for an offense, each one is entitled to the same number of peremptory challenges of jurors as he would have been entitled to if he had been tried separately.
2. **Mayhem—Intent.**
    In a prosecution for mayhem a specific intent to maim is not a necessary ingredient of the offense.
3. **Practice in Criminal Cases—Instructions—Degrees of Crime.**
    In a prosecution for a crime which includes within the charge lower grades of crime, where there is any evidence tending to establish a lower grade the jury should be instructed as to such lower grade, but where there is no evidence tending to establish a lower grade then such lower grade should not be submitted to the jury.

*Error to the District Court of Gunnison County.*

The defendants were convicted of high misdemeanor under the provisions of the statute concerning mayhem (Laws 1895, 156), upon an information charging that they unlawfully and feloniously deprived the prosecuting witness of his right ear, and disfigured it, and rendered it useless. At the time the injury complained of was inflicted upon the prosecuting witness, he and two men who were helping

him were upon the land of the defendant L. M. Carpenter, for the purpose of making some alterations in an irrigating ditch through which the prosecuting witness claimed the right to irrigate certain land. The defendants came there heavily armed to see what he was doing. As to what then occurred the evidence is conflicting. According to the testimony for the people, X. L. Carpenter, without provocation, almost immediately struck the prosecuting witness with a rifle, breaking his arm; L. M. Carpenter then struck the prosecuting witness with his fist, and they clinched and fell upon the ground and L. M. Carpenter bit off the ear. The defendants testified that they came up peaceably and inquired of the prosecuting witness what right he had to be upon L. M. Carpenter's land, or to change the ditch; that he called them names, and had reached for his pocket as if to draw a "gun," at the time X. L. Carpenter struck him; that he provoked L. M. Carpenter to strike him by calling him names; and that L. M. Carpenter did not bite off the ear, but that it was cut off by striking against a root when they fell upon the ground.

The principal errors complained of are: (1) That the court denied the right of the defendants to ten peremptory challenges each in the empaneling of the jury. (2) That the court refused to instruct the jury that a specific intent to maim is a necessary ingredient of the offense. (3) That the court refused to instruct the jury that the charge of assault and battery is embraced in the charge of mayhem and should be considered by the jury in arriving at their verdict.

Messrs. BROWN & NOURSE and Messrs. TEMPLE & CRUMP, for plaintiffs in error.

The ATTORNEY GENERAL and Mr. S. G. McMULLIN, district attorney, for the people.

Mr. JUSTICE STEELE delivered the opinion of the court.

The statute under which the defendants claim the right to ten peremptory challenges each is as follows:

"That the people and the accused shall be entitled, each, to fifteen (15) peremptory challenges in capital cases, and in all other cases where the punishment may be imprisonment in the penitentiary to ten (10) peremptory challenges each. And in all other criminal cases the defendant shall be allowed a peremptory challenge of three jurors. The attorney prosecuting on the part of the people shall be admitted to a peremptory challenge of the same number of jurors that the accused is entitled to, and no more."—Mills' Annotated Statutes, sec. 2596.

The case on behalf of the people was presented by Hon. S. G. McMullin, the district attorney who tried the case; attorneys general Post and Miller taking the position that the court erred in refusing each defendant ten peremptory challenges. We concur with the attorneys general that the cause must be reversed for failure of the court to grant to each defendant ten peremptory challenges. In the statute, "accused" is used synonymously with "defendant," and, in our opinion, each defendant is entitled to ten peremptory challenges. The only case presented in which the words "the accused" are considered is that of *State v. Smith*, 57 Miss. 822. In that case it is said: "At common law prisoners were allowed peremptory challenges in trials for felonies only; but it seems to be well settled that, in such trials, in case several defendants are jointly tried, each is entitled to the full number of challenges, as if he had been tried separately. Our statute * * * allows four peremptory challenges. * * * The language is, 'In all cases not capital, the accused should be al-

lowed four peremptory challenges and the state two.'
A well recognized rule is, that in construing statutes
changing the common law, the latter shall not be con-
sidered as altered farther than the plain provisions
of the statute requires."

And the court reversed a conviction where sev-
eral prisoners tried jointly, were restricted to four
peremptory challenges.

For this error the case must be reversed and re-
manded; but in the hope of avoiding another mistrial,
we shall pass upon other questions likely to arise
upon a new trial.

The statute under which the defendants were
convicted is as follows:

"Mayhem consists in unlawfully depriving a hu-
man being of a member of his or her body, or disfig-
uring or rendering it useless. If any person shall un-
lawfully cut out or disable the tongue, put out an eye,
slit the nose, ear or lip, or disable any limb or member
of another, or shall voluntarily and of purpose put out
an eye or eyes, every such person shall be guilty of
mayhem, and on conviction shall be punished by con-
finement in the penitentiary for a term not less than
one year nor more than twenty years; *Provided,*
That no person shall be found guilty of mayhem,
where the fact occurred during a fight had by consent,
nor unless it appear that the person accused shall
have been the assailant, or that the party maimed
had in good faith endeavored to decline further com-
bat. But in all other cases, where the fact shall hap-
pen in actual fight, the party accused being thereof
duly convicted, shall be adjudged guilty of a high
misdemeanor and punished by imprisonment in the
penitentiary not exceeding one year, and be fined not
exceeding one thousand dollars."—Laws 1895, p. 156.

This statute differs from the earlier one, which
was passed upon by this court in *Foster v. People,* 1

Colo. 293, only in the penalty for the offense designated mayhem. It was there held that the proviso should be read as if there were no period after "combat," and that the clauses of the proviso to, and including, the word "combat," refer to the crime of mayhem as previously defined and punished; that neither of the two clauses limits or qualifies the other. And the court construed the statute to mean, that one cannot be convicted of the principal crime where the maiming occurs during a fight had by consent; that the assailant in a fight not by consent may be convicted of the principal crime; that one not the assailant, in a fight not by consent, may be convicted of the principal crime, for maiming after his assailant has in good faith declined further combat; that maiming in a fight had by consent is punishable only as a high misdemeanor, without regard to who was the assailant or whether the injured party had declined further combat; and that in cases of actual fight not by consent, where the assailant is maimed, and he has not in good faith declined further combat, the maiming is punishable only as high misdemeanor.

The instructions given upon the trial were not entirely in accordance with this construction of the statute.

A fight by consent is a fight had upon a mutual agreement to fight together. As a proof of such agreement may be direct or circumstantial, it is ordinarily a proper question to be submitted to the jury.

There is nothing in the statute to indicate that a specific intent to maim is necessary. The words *voluntarily* and *purposely* are used with respect to putting out an eye, but *unlawfully* putting out an eye is an offense of the same grade, though not necessarily meriting the same punishment. We think it was the intention of the legislature to hold persons responsible for unintentional maimings, when inflicted un-

lawfully, in cases within the purview of the act. In *Terrell v. State,* 86 Tenn. 523, under a statute that, "No person shall unlawfully and maliciously put out an eye, * * * whereby any person shall be maimed or disfigured," the court held that a specific intent to maim was not a necessary element of the crime of mayhem, and sustained a conviction where the defendant had struck the prosecuting witness in the eye with a piece of brick, thereby putting out the eye, although the court below refused to charge that unless "the defendant did of his malice aforethought inflict the blow, with purpose or intent to put out the eye, or inflict some other mayhem on the prosecutor, then the defendant would not be guilty of mayhem."

Instruction No. 8 offered by the defendants was a request to instruct the jury that if it found from the evidence that the defendants were not guilty of mayhem, but were guilty of assault and battery, the jury might find them guilty of the latter offense as being included in the former. The court refused to so instruct the jury, and the defendants insist that error was committed in so refusing. It is said that because assault or assault and battery are ingredients of such crimes as murder, rape, and mayhem, the defendant has a right to demand that the jury be instructed not only upon the various grades of the offense charged, but upon various grades and varieties of assault and assault and battery. No authority is cited in support of the contention except that of *Guest v. State,* 19 Ark. 405. In that case the court sustained a verdict finding a defendant guilty of aggravated assault and battery, and held, "that upon an indictment for a felony, the accused may be convicted of a misdemeanor, where both offenses belong to the same generic class, where the commission of the higher may involve the commission of the lower offense, and where the indictment for the higher offense contains

all the substantive allegations necessary to let in proof of the misdemeanor.'' But no authority has been cited declaring that it is the defendant's right to have the jury consider, under proper instructions, whether he is guilty of some other and lower offense than that charged in the information. In cases where the testimony tends to establish a lower grade of the offense charged, then the jury should be instructed that it may find the defendant guilty of the lower grade of the offense. Thus, when a defendant is charged with murder or mayhem, and the evidence tends to establish a lower grade of the same offense, the question should be submitted to the jury. But, as was said by Judge Hallett in the case of *Smith v. The People,* 1 Colo. 121, ''If, in a case of felonious homicide, the evidence shows the killing to have been deliberate and intentional there is no question of manslaughter presented, and therefore no reason for submitting that question to the jury. To require the jury in such a case to pass upon the question of manslaughter would be as unreasonable and absurd as to instruct them respecting the crime of larceny.'' And further, quoting, with approval, *State v. Mill,* 3 Nev. 444, ''If it was proper, under such a state of facts, to charge the jury they might, in their discretion, find the prisoner guilty of manslaughter, it was equally proper to charge they might find him guilty of an assault to commit murder, or even guilty of a simple assault, for both of these are crimes of which a party under our statute may be convicted upon an indictment for murder; yet in a case where a party was beyond all question slain, and another party indicted for the murder, it would seem ridiculous to charge the jury that they might find the defendant guilty of a simple assault.''

In the case of *State v. Mahon,* 68 Iowa 304, the

court says: ''If the evidence in a case should show beyond all question that the crime of murder had been committed, and the only controverted question of fact should be whether the accused was the guilty party, it certainly would not be proper for the court in that case to instruct the jury as to the offenses lower than murder, which were included in the indictment. In the case before us, as we have seen, it was admitted by the defendant that he had by violence inflicted on the person of Murphy a wound which caused his death, but his claim was that his act in inflicting such injury was not unlawful. The question in controversy was as to whether he struck the fatal blow unlawfully, and, as it was conceded that death resulted in consequence of the blow, it would follow necessarily that if the blow was unlawful he was criminally responsible for the death which resulted from it. On the conceded facts, then, he was either criminally responsible for the death of Murphy or he was not guilty of any crime.'' This case is cited with approval in *State v. Perigo,* 80 Iowa 37.

In this case it is conceded that the prosecuting witness lost his ear while engaged in an encounter with one of the defendants. Witnesses for the state aver that the defendant L. M. Carpenter bit off the ear of the prosecuting witness, the defendant says that he threw the prosecuting witness to the ground and that the ear was severed as the result of the fall. The only question for determination was whether the defendant unlawfully deprived the prosecuting witness of his ear. The case *Smith v. People,* cited above, is decisive, and the court properly refused to instruct the jury upon the question of assault and battery.

For the reason that the defendants were allowed but ten peremptory challenges jointly, the case is reversed.

*Reversed.*