Kinkead, J.
Defendant was convicted of murder in the first degree, with recommendation of mercy. The case is submitted on motion for new trial.
The indictment charged that defendant killed Homer R. Day, a taxi-cab driver while engaged in committing robbery upon him. It makes no other charge. It did not charge deliberate and premeditated killing. It charged that defendant and John Doe assaulted Day, and by violence and by putting him in fear took from him, money, a watch and other articles all of the value of $90.00; that while in the act of robbing him, they— defendant and John Doe (the other person was unknown and not apprehended) shot and killed Day with a revolver.
The indictment did not charge any other class of homicide; it did not charge any other of any other elements of any other kind of first degree murder; it did not charge deliberate and premeditated malicious killing. It set forth the manner of killing and closed with the allegation “in the manner and by the means aforesaid, unlawfully, purposely, and while perpetrating a robbery, defendant did kill and murder.”
The undisputed, evidence shows that two persons who rode from Chillieothe to Columbus with Day in his taxicab, robbed and killed him, threw him out of the machine and drove off. Evidence of the dying declaration of deceased made under sense of impending death disclosed and fully proved the robbery and the shooting of him with a revolver. He died within a short time after the shooting. Evidence of witnesses tended to prove that defendant was in Chillieothe on the 10th of February, 1919, the day of the murder; that he made inquiry of persons concerning a taxicab for Columbus, and that he was referred to Day. Evidence was given of a declaration that he was one of the men who committed the deed. The defense was an alibi, proof being introduced by the time-keeper of the factory, whose recollection was refreshed by reference to his time book, which book, however, did not show the dates without the explanation of the time-keeper as to his method of keeping it. The evidence was largely what is commonly called circumstan *67 tial evidence, it not being essential to further set it forth. Several witnesses identified defendant as the man in Chillicothe arranging for a taxicab.
It is sufficient to state that all the evidence tended to prove guilt of murder while committing robbery; that there was no evidence — not a scintilla — tending to show any other crime. The evidence showed the commission of robbery; that act under the statute, however, is a mere constituent element .of murder purposely committed when perpetrating robbery: when death results from the discharge of a bullet in committing the robbery, the act of robbery is merged and becomes a mere part of the crime of murder.
The paramount question arises upon the instruction to the jury concerning the crime charged, and the duty of the jury in the rendition of its verdict. After charging the jury upon the preliminary matters usually contained in an instruction in a criminal ease — such as presumption of innocence, burden of proof, credibility of witnesses, etc., the charge upon the law applicable to this kind of first degree murder, upon the evidence, and the duty of the jury in rendering its verdict was brief and was as follows:
“Statute 1240 defining this crime is as follows: ‘Whoever * * * in perpetrating or in attempting to perpetrate robbery kills another is guilty of murder in the first degree.’ In a homicide such as is charged in this case, that is, one committed in the perpetration of robbery, the enormity and turpitude of the criminal act in which the person charged was engaged at the time of the killing, supplies the place of the deliberate and premeditated malice, which is the element of first degree murder where the offender purposely and with deliberate and premeditated malice kills another. (8 O. S. 131; 69 O. S. 215.) Therefore, in this case, it is not necessary to prove deliberation and premeditation. (69 O. S. 215; 42 O. S. 150; 5 C. C. 496.) All that, is required is that it shall be made to appear that defendant purposely killed the deceased Day while engaged in the act of robbing him. Intent and purpose to kill, however, is essential. To purposely kill another is to intentionally kill. It must appear that defendant purposely and intentionally killed Day while committing the crime of robbery. The law, *68 however, regards all persons who have arrived at years of discretion as rational beings, capable of reasoning from canse and effect. Every person possessed of the faculty of reason is presumed to contemplate and intend the natural and probable consequences of his acts. If a person inflicts a mortal wound upon another in a manner purposely calculated to destroy life, an inference may be drawn therefrom by the jury that the person using a revolver and discharging a leaden bullet therefrom into the body of another intended to kill the person. This is for the jury to determine as a fact; that is whether intent to bill may be inferred from the use of a deadly weapon. ’ ’
The above constitutes all that was stated to the jury in reference to the definition of this grade or class of homicide.
The jury was also instructed in respect tó the crime of robbery, which constituted an incidental essential element of this grade of homicide, and then was charged as follows:
“The court now instructs the jury concerning its duty in arriving at its verdict. Every act of murder while in the commission of a robbery involves an assault and battery upon the victim. It also involves the crime of robbery. Before a verdict of murder in the first degree may be found, the jury must find that the defendant was engaged in robbing the deceased, at the time such murder was committed. Where, however, the evidence shows that the act of shooting a leaden bullet into the body of the person by one engaged in robbing him results in death, the verdict by the jury can only be one either of guilty or not guilty of the crime of murder in the first degree. Accordingly the court submits to the jury three forms of verdict, one guilty as defendant stands charged, another, not guilty, and the third, guilty as charged, but with the recommendation of mercy. The statute provides that when the jury finds one guilty of murder in the first degree while in the act of committing robbery, he shall be punished by death unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary for life.”
The chief error claimed is that the court should have charged the jury concerning the several degrees of general homicide and have submitted verdicts therefor.
Section 12400 defining the classes of first degree murder has remained in substance the same as when first enacted, except *69 as to murder by poison. Murder at common law was repealed in 1815, and was then divided into two degrees (2 Chase’s St., 857). The statute then read :
“If any person shall purposely' of deliberate and premeditated malice, or in the perpetration or attempting to perpetrate any rape, robbery, or burglary, kill another, every such person shall be deemed guilty of murder in the first degree, etc. ’ ’
In 1835 the statute was slightly changed.
It was finally changed’ to its present form, viz.:
“Whoever, purposely, and either (1) of deliberate and premeditated malice, or (2) by means of poison, or (3) in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree.”
The construction given the statute in early years by Bartley, . J., has been regarded as the correct one, viz.:
“This section is composed of one compound sentence, and is descriptive of three classes of homicide, towit: First, that which is committed of deliberate and premeditated malice: Second, that committed while in the perpetration, or attempt to perpetrate a rape, arson, robbery, or burglary; and, third, that committed by administering poison, etc. ’ ’
In the present statute murder by poison is the second class, and murder in perpetration of the felonies the third class.
The three general classes of first degree murder are defined by 'Section 12400; second degree by Section 12403, and manslaughter by Section 12404, and are:
(1) The killing of another purposely, and with deliberate and premeditated malice is first degree murder.
(2) The killing of another purposely by means of poison is first degree; and
(3) The killing of another purposely while perpetrating or attempting to perpetrate rape, arson, robbery, or burglary, is first degree murder.
(4) The killing of another purposely and maliciously is second degree, made so by a separate statute.
*70 (5) Unlawful killing another without intent, without deliberate and premeditated malice, without malice upon adequate provocation or while engaged in the commission of an act made unlawful by statute, is manslaughter.
(6) The killing of another purposely, but without deliberate and premeditated malice, by the use of a deadly weapon such as a revolver causing a mortal wound is murder in the second degree.
(7) But shooting another when engaged in robbing him, death resulting from a mortal wound caused by a leaden bullet fired from a gun, cannot be mere second degree murder, because the slayer both robbed and billed the victim by the same act or transaction.
(8) When the robbery is committed and the person is killed by the robber by a shot fired from a revolver at one and the same time and act, how absurd would it be to instruct the jury that an indictment for such grade of first degree embraces second degree murder, manslaughter, simple assault, assault and battery, when that is neither a true statement of fact or sound law.
The time honored customary fiction and practice that such crime embraces a lesser degree is a cloud upon the administration of the law.
As stated in the opinion in State v. Menhinney, 43 Utah, 135:
“Why submit a question to the jury upon which an affirmative finding can in no event be justified? Is not the question of whether there is any evidence in support of any essential fact as much a question of law in a homicide as any other? The court should not in its instructions authorize and in a sense invite the jury to violate their oath and bring about a miscarriage of justice.”
Section 13692 originally read as follows:
“That in all trials for murder, the jury, before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict, whether it be murder in the first or second degree, or manslaughter.” (1 S. & C. 416.)
*71 This was the language when Robbins v. State, 8 O. S. 131, was decided: “Thai in all trials of murder” of course applied to no other kind of crime; “shall ascertain whether it be murder in. the first or second degree, or manslaughter, ’ ’ is not mandatory upon court and jury because of the use of the word “shall,” regardless of the state of the evidence. The statute originally applied to murder trials only. The present statute applies to all crimes where the indictment Charges an offense, including different degrees, and was corrected and amended either to change its meaning or to make its intent clear, viz.:
“When the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree and guilty of an inferior degree thereof.”
Judge McIlvaine in Morehead v. State, 34 O. S. 212 stated that it was intended to define the “power of the jury and not to control the form of verdict.” This is significant language: It was to confer power to render a verdict according to the evidence and the law. Criminal law as well as procedure being purely statutory, courts deriving no power under the common law, it was essential that the power of jury and court as well as the mode of procedure should be specifically prescribed by statute.
The amendment of the statute eliminating the words “That in all trials for murder” and practically enacting a new provision extending the principles to all classes of crimes where the charge in the indictment embraces lower degrees thereof, and giving the power to the jury to find the accused guilty of the lesser degrees was a radical change in the statute.
The language of the old section “That in all trials for murder,” the jury shall ascertain in their verdict, etc., was construed by earlier decisions as conferring unrestricted power upon juries to find the degree of murder.
For instance, in Dick v. State, 3 O. S. 89, a verdict of guilty as he stands charged in the indictment was held to be an error for the reason that “a verdict ‘of guilty in manner and form as he stands charged in said indictment’ was insufficient” *72 and that “the verdict (did) not ascertain the degree of the crime as required by law.” The charge in the indictment was first degree murder; that included the lesser degrees, and the statute designed that the jury should ascertain and determine the fact — i. e., the degree of guilt. This was the reasoning of the majority opinion. The judgment was reversed because the verdict was considered uncertain; “guilty as he stands charged,” the majority of the court held to be uncertain on the ground that the charge embraced second degree and manslaughter. Bartley, Corwin and Caldwell concurred in the majority opinion, Raney and Thurman dissenting.
Ranney contended that neither of the lesser crimes was “the crime charged in the indictment. That crime is murder in the first degree, * * *”
The question was one of certainty of the verdict. The following extracted from the Ranney opinion is instructive:
“If deliberation and premeditation are wanting, the charge as made is not proved, but if the balance of the elements are proved, he is guilty, noi\ of the crime with which he stands charged, but of a lesser crime included within it, and exactly covered by such averments. The crime charged consists of a specific number of indispensable elements, forming one indivisible whole. Without them all, it does not exist; and with them all, charged in the indictment, and found to be ti*ue in manner and form as charged” * * * “they are effectually made part of the verdict.”
When the Supreme Court had before it the question of the charge of first degree murder including the lesser offenses, in Robbins v. State, 8 O. S. 131, the indictment was for administering poison to a woman who was pregnant. The statute then provided that “in all trials for murder’’ the jury shall, if they find the defendant guilty, ascertain from -the evidence * * * the degree of homicide.” The trial court took the view that no intent was involved, and that such class of crime was not divided into different degrees of crime, as was murder purposely committed and with deliberate and premeditated malice. The majority opinion held that “in all cases of crim *73 inal homicide, the crime is graduated, and may be one or the other of the three degrees,” holding that a verdict “as defendant stands charged is not sufficient”; that “murder by poison can not be made an exception.” “The language of the statute is, “that in all trials for murder, the jury shall ascertain the degree of the crime.” This is about all that Bartley, J., stated in respect to this question. It is apparent that this was based on what might have seemed to be the imperative language of the statute “that in all murder trials” when the jury finds defendant guilty it shall ascertain the degree of crime. This conception, even under the statute then existing, wholly fails to take the evidence or proof into consideration. The evidence showed that the woman to whom poison was administered died as a result thereof.
The holdings of the majority opinion on the questions of law are inconsistent with that portion of the opinion dealing with the form of the verdict. The vital question was whether the accused gave the poison with intention to kill, or whether the drug was administered to produce an abortion. The court held that if the latter was the purpose the crime was not murder in the first degree.
Judge Bartley’s opinion fails to meet this question, page 195 being all that is stated in respect thereto; he merely states that manslaughter undeniably may be committed by means of poison, referring to a Connecticut decision to that effect. It contains no statement of principles or reasoning: this portion of the opinion is not of great weight. Swan and Brinkerhoff, J. J., dissented.
In the later case of Adams v. State, 29 O. S., 412 (1876), the indictment contained a count for deliberate and premeditated murder, and a second count for purposely killing while attempting to rob. The ground of érror was that the charge to the jury precluded it from finding defendant guilty of murder in the second degree under the count of killing while attempting to rob.
White, J., in rendering the opinion especially states that the intention of Robbins v. State, O. S. 132, is not
*74 “to deny that it is the right and duty of the court to instruct the jury upon all questions of law arising before them in the case; nor to relieve the jury from the duty of receiving the law as given them by the court. The principle of that ruling is that the jury must not be imperatively required to render a verdict for a particular degree of homicide.”
Judge White in the Adams case also referred to a Pennsylvania decision under a statute claimed to be similar to the Ohio statute, viz., the case of Shaffner v. Commonwealth, 72 Pa. St., 60, in which the charge of the court was that “if the prisoner is guilty, there can be no difficulty in ascertaining the degree, for being by poison, it must be in the first degree if purposely administered.” The jury was instructed that if it was convinced of the guilt of the accused, “it is murder in the first degree as declared by the act * * '* and it is your duty to say so without regard to the consequences to the prisoner.”
The ease of Adams v. State, supra, directly recognizes the position taken in the case at bar, and was in fact a modification of the Bobbins case. It was a specific recognition of the right and duty of the court to instruct the jury upon these questions of the law raised by the evidence. It is stated in the syllabus, 4th Par., that, “* * * it is to the prejudice of the accused for the court to restrict the jury, in finding the defendant guilty of murder in the second degree, to one of the counts only. ’ ’
The instruction limited the finding of guilty of murder in the second degree to the first count of the indictment, which charged the killing to have been done purposely and with deliberate and premeditated malice.” The second count charged killing in an attempt to rob.
Here then is an express judicial recognition of the position taken by the writer in the case at bar. The charge in the Adams case in the first count charged premeditated murder, while the second count charged purposely killing while attempting to rob.
This case expressly overrules Robbins v. State and upholds the position taken in case at bar which eliminated both second degree murder and manslaughter.
*75 Comment has not been made upon Beaudien v. State, 8 O. S., 635 (1858). In this case counsel for state and defendant conceded and admitted that defendant was either guilty or not guilty of intentional, deliberate and premeditated malicious murder, or nothing; the court charged the jury accordingly, probably relying upon such admissions. No exception was taken to the charge. This was under the old statute providing: “That in all trials for murder the jury * * * shall ascertain the guilt, etc.
The opinion is of little consequence upon the questions here. It was of the first class of homicide, involving neither murder by poison nor in perpetrating a felony; and the admissions by counsel could not be relied upon. The court should have charged the law applicable to the evidence.
Section 13692 as it now reads came into the Code in 1869, in 66 O. S., 312, Sec. 168. When Adams v. State supra, and Dresback v. State, 38 O. S., interpreted the provision differently than did Robbins .v. State, etc., the court must have considered that the amended section should be differently interpreted than the original section in force at the time Robbins v. State was decided.
“That in all cases of murder when the jury finds defendant guilty the jury shall ascertain the degree of crime,” might reasonably appear to different minds as of different import than language that: “When the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged and guilty of an inferior degree thereof.”
We think, however, the purpose and intent was always the same, the paramount question — being that the court should charge the jury upon the laiv presented by the evidence, or only upon the facts which the evidence tends to prove. It was not intended to confer discretionary power upon the jury to ascertain and determine the degree of crime regardless of the evidence and laio, as some seemed to think it was; it was not an unlimited or discretionary power.
Dresback v. State, 39 O. S., 365 (1882), decided under See. *76 tion 13692 in its present form, though, unsatisfactorily reported, nevertheless is sufficiently clear to show that it correctly decided the questions involved in murder by poison. Judge Spear and his associates, whose minds by their own admission were puzzled by Judge White’s opinion, evidently failed in Lindsey v. State, 59 O. S., to understand the full import of the decision. However, Judge Wanamaker’s clear exposition of the basic question in State v. Schaffer, 96 O. S., 215, has vitalized Dresback v. State, supra, as an authority by approving it and overruling Lindsey v. State in so far as the latter is in conflict with the principle there laid down that the law of a homicide case depends upon the evidence.
The indictment in the Dresback case was for murder by means of poison. In his opinion Judge White stated that:
“The evidence against the accused tended to prove that he purposely killed his wife by administering to her poison; and it tended to prove no other grade of offense. If the jury found him guilty, it was their duty to find him guilty of murder in the first d&gree; but if the charge was not proved he was entitled to an acquittal. The court, however, instructed the jury that they might, consistently with their duty, find him guilty of murder in the second degree, or of manslaughter. * * * ”
This form of charge was held to be error.
Judge White specifically followed the principle of Adams v. State, 29 O. S., 415, to the effect that the Robbins case ruling did not intend to deny the right and duty of the court to instruct the jury upon all questions of law before them. Judge White distinguished the Robbins case (virtually overruled it), stating that the charge given therein was held to be an invasion,— “ivhile instructing them as to their duty tipon a given state of fact in a case, is no such invasion.”
The trial court in the Dresback ease erroneously instructed the jury concerning the degree of murder, first, second and manslaughter and,
“in effect,” says Judge White, “told the jury that their duty would be fulfilled, in case they found the accused guilty, by *77 returning a verdict for murder in the first or second degree, or for manslaughter.”
On the question whether the erroneous charge prejudiced the accused, Judge White stated:
“We have all the evidence before us, and cannot say so, the evidence is wholly circumstantial, and we are unable to say that the jury might not have acquitted him had they been properly instructed.”
There was prejudicial error, the court thought; if the jury had been correctly instructed the accused might have been acquitted. In the case at bar this court considered the charge more favorable to the accused, and that he stood a better chance of being acquitted than if verdicts for the lower degrees were submitted.
The effect of this Dresbaek decision was that the evidence and the law showed the defendant to be either guilty of first degree murder or guilty of nothing.
Whether the court in the Dresbaek made its ruling on the theory that murder by poison did not include different degrees, or that the evidence tended to prove no other crime than first degree or both, is immaterial. It is an authority supporting the action in the case at bar in ivhich the evidence only tended to show the guilt of murder when robbing deceased, and tended to prove no other offense.
The decisions since Robbins v. State, have not discussed the principle of the higher grade of crime including the lesser degrees. Ever since the Robbins decision it has been assumed that first degree homicide includes the lesser degrees of homicide. Ho blindly has the alleged general rule of the statute been adhered to, regardless of evidence and law, that probably none have ventured to depart from what trial judges over and over again have believed to be improper practice. We have been sticking to the bark of supposed precedent too long, probably “playing safe,” probably, not considering the matter carefully, or perhaps being too timid. Progress will never be made unless old rules are sometimes broken. Having slightly broken away *78 from confirmed precedent in Snouffer v. State, 20 N. P. N. S. 65, in a case of premeditated first degree murder or nothing, which was approved by both reviewing courts, it is to be hoped that this venture will be the means of clearing away some cobwebs of precedent. In the last mentioned case the evidence tended to prove deliberate and premeditated murder and tended to ■prove no other grade of crime. The accused threatened and planned the murder; it was not a mere case of the use of a deadly weapon from the use of which, purpose and malice could be inferred. There was no sudden quarrel, no adequate provocation, no want of malice. Upon the evidence there should have been no instruction given upon either second degree or homicide. This in truth is the doctrine of Adams v. State, supra, Dresback v. State, supra, and carried to its logical conclusion is the rule of State v. Schaeffer, 96 O. S. 227, which lays down the general principle that no charge should be given nor form of-verdict submitted for a degree of crime in any ease where there is no evidence even tending to prove the same.
Counsel places great stress upon Lindsey v. State, 69 O. S. 216, which it is claimed reiterates the doctrine of Bobbins v. State. The Lindsey decision seems so irreconcilably out of tune with the true theory as correctly stated by our court, and as supported by reason, that it should no longer be regarded as a sound precedent. It confesses misunderstanding of the Dresback case which decided the question correctly. Aside from this it will later be made to appear that Judge ‘Wannamaker’s opinion in the Schaeffer case, completely overrules it by the adoption of the fundamental principle that no charge should be given upon a crime when there is no evidence to prove it.
The puzzled minds were those of Judge 'Spear and his associates; the rule of decision in Dresback v. State is clear and sound, even though it be not set forth at length. The essential facts are there.
Returning to the Lindsey case, the form of the indictment set forth in full therein should be observed. The indictment in the present case is precisely like it. It charged first degree murder in perpetrating robblery; a revolver was used and the *79 victim immediately hilled. The trial judge charged the jury as to all three degrees of homicide, and in addition thereto instructed the jury as to assault and battery according to the past prevailing practice in deliberate and premeditated murder eases. The complaint on error was precisely the same as in Dresback v. State, a robbery case, that if the jury had been properly instructed they could not have found the defendant guilty of second degree as it did. There was no evidence supporting the verdict; the evidence clearly disclosed that the deceased ivas killed by means of a revolver while defendant was attempting to perpetrate a robbery. The evidence did not even tend to prove murder as defined by Section 1240Q, where one merely kills purposely and maliciously, not in the perpetration or in attempting to perpetrate a robbery. The Supreme Court seems to have affirmed the verdict and judgment solely and only by reeason of the fact that defendant’s counsel invited the error by the form of request to- charge which was given, and for the further reason that there was the element of the use of a deadly tveapon and infliction of a mortal ivound which caused■ immediate death.
The verdict and judgment for second degree murder in the Dresback case was reversed because it was thought the jury would probably have found the defendant not guilty of first degree, if the jury had been propérly instructed. So in the Lindsey case (robbery case) the verdict was for second degree, when it ought to have been either guilty or not guilty of killing while committing robbery. The Lindsey case should have been reversed as was the Dresback ease, and for precisely the same reason. The fact that counsel for Lindsey invited the error might have been as appropriately disregarded, and the judgment could have been appropriately disregarded, and the judgment could have been as justifiably reversed as was that in Beaudien v. State, 8 O. S. 635, because the court there.misdirected the jury by acting upon the admissions of counsel, and though no exception -was taken to the charge. The verdict in Lindsey v. State, supra, was erroneous for the reason that the evidence tended to prove murder while attempting to rob, and.it tended to prove no other crime. *80 It was a typical case of maladministration, dne to erroneous adherence to alleged precedent, by trial and reviewing courts.
The claim of the accused was that murder in the second degree could not be sustained under the indictment; that there should have been either an acquittal or conviction of murder in the first degree. But the court found no error, stating in its opinion that its conclusion was,
“in accord with the holding of this court in Robbins v. State, 8 O. S. 131; Beaudien v. State, 8 O. S. 634; Adams v. State, 29 O. S. 412, etc.”
The court, however, failed to discover the real import of the Dresbaek ease and did not appreciate the plain facts as to what charge and proof was, it being stated that the report had puzzled manjr legal minds. The judgment in the Dresbaek case was reversed because the jury was erroneously instructed in a ease of murder in commission of a felony.
Judge White distinguished the Robbins case by this language:
“Tlie charge in the Robbins ease was held to be an invasion of the province of the jury; while instructing them as to their duty upon a given state of facts * * * (is) was no such invasion. ’ ’
Murder in the first degree committed while perpetrating robbery, where the deceased is robbed and killed by a single act, embraces neither second degree nor manslaughter nor assault and battery, because the deceeased was robbed and killed in one act or transaction.
The last Ohio decision to be considered is State v. Schaeffer, 96 O. S. 215, which announced the principle that no instruction should be given upon a degree or grade of crime when there is no evidence tending to prove the same. This is the fundamental proposition lying at the basis of the whole question; it is the principle upon which a proper meaning and construction shall be attributed to Section 13692, as a practical proposition of procedure.
Whether one or all three classes of first degree murder em *81 braces lesser degrees thereof depends upon the scope and intent of the sections creating the same. It was intended that Section 13692 should apply only to crimes having lesser degrees. It would seem that the language of the original provision: "That in all cases for murder * * * the jury shall, if they find defendant guilty, ascertain from the evidence the degree of homicide” had much to do with early conclusions that it was in the nature of a statutory power conferred upon the jury.
There never seemed any foundation for charging assault, or assault and battery in murder cases. The only fault to be found with State v. Schaeffer, supra, is that the court did not place its decision not only upon a want of evidence, but also upon the principle that it is not an included degree of crime.
There are but two inferior degrees of deliberate and premeditated murder, viz,: second degree and manslaughter. Assault and battery never was a lesses degree of homicide being an 'entirely different crime. There never -was any justification for submitting a verdict for assault and battery. This having been an illogical mode of procedure ought now to be effectively eliminated by State v. Schaeffer. However, the judge delivering the opinion indulges in some unwarranted speculation on this subject. Assault is an act always involved in murder, but it is a mere incident and is merged in the homicide. Assault or batsault and battery can only be charged and submitted for decision when the person survives, or perhaps under some peculiar circumstances as in the Wells (Deshler) case tried by the writer where defendant claimed that hé took hold of the deceased to take the revolver away from her, and while scuffling the revolver was accidentally discharged. But even then, I think a charge upon assault and battery inappropriate, because the indictment did not charge that offense.
Of course it is true as Judge Welch stated in Martz v. State, 26 O. S., 162, 168, that
"the jury might have found that it (death) resulted from some other cause,”
*82 It is significant that Judge Wannamaker’s opinion (96 O. S., on p. 227) adopts the ruling in Dresbach v. State, 38 O. S., 365, and the syllabus by the court specifically adopts and approves the doctrine of that case, wherein the charge of the court in a poison case erroneously permitted the jury to find a verdict for the inferior degree of second degree murder or manslaughter, Wannamaker, J., stating that:
“Justice White clearly holds that the crime charged was first degree or nothing, because there was no evidence tending to prove any other grade of offense, and that if that charge was not proved, the accused was entitled to an acquittal. ’ ’
Not only did the Supreme Court in State v. Schaeffer, supra, approve the doctrine of Dresbach v. State, supra, but it also specifically disapproved Lindsey v. State, 69 O. S., 215, “so far as (it) is in conflict with Dresbach v. State, 38, O. S., 365.” That is, the doctrine enunciated upon the record in State v. Schaeffer not only disapproved the inclusion of assault, but it considered the general doctrine set forth in the Dresbach case — that where there is no evidence tending to prove any other grade of offense than the one charged in the indictment, the verdict must be for that charged, or of acquittal. Not only has “this assault and battery plea”
“been overworked to the great prejudice of the state, to the lessening of confidence in the judgment of our courts and juries, and to the undermining of the safeguards provided by law for the security and protection of human life,”
as stated by Judge Wanamaker, but misinterpretation of Section 13692 has also been so long and continuously overworked that for many years judges have either through fear of mistake or lack of courage contributed “all their might” to miscarriage of justice by giving the power to juries “to disregard the evidence,” and “find one who is clearly guilty of first degree murder guilty of manslaughter or acquit him. ’ ’
The charge of the court in the case at bar was framed solely upon the theory that “murder in the first degree in the commis *83 sion of robbery” does not embrace second degree murder nor manslaughter, but as well upon the fact that the evidence tended to prove that crime or his innocence thereof, and that no evidence was offered tending to prove any other crime whatsoever. That is the doctrine of State v. Schaeffer, 96 O. S., 215; Dresback v. State, 38 O. S., 365; Adams v. State, 29 O. S., 412. The latter case involved a charge of murder while attempting to rob. The jury were instructed that if the defendant purposely killed the deceased in attempting to rob him, the offense was murder in the first degree, and not murder in the second degree. “This was correct and it was the duty of%the court to so instruct the jury,” said White, J.
In the ease at bar there was no evidence whatsoever tending to reduce the homicide to either second degree murder or manslaughter ; true death was caused by a mortal wound, by a leaden bullet fired from a revolver; but as the indictment only charged first degree murder while in the commission of robbery and not intentional, deliberate and premeditated malicious killing, and as the undisputed evidence proved a killing while perpetrating a robbery, a legal verdict could only have been one of guilty or of not guilty.
Attention has been called to State v. Harmon, a case tried in this court many years ago, being cause No. 7538 tried before Judge Bigger formerly of this court. The indictment charged' murder in the first degree while in perpetration of burglary. Judge Bigger charged that murder was divided into three classes, as did the writer in this case. He also stated that defendant was charged with the third class; and in the instruction to the jury it was stated that under a charge of billing purposely and with deliberate and premeditated malice a defendant may he convicted of either first degree, second degree, manslaugh" assault and battery or simply assault. He then charged (erroneously we think) that:
“But the crime charged in this indictment does not include the lower grade of homicide known as murder in the second degree. Under such an indictment as this a defendant may be found guilty of murder in the first degree, of manslaughter, of robbery, of assault and battery, or of simple assault.”
*84 Forms of verdict were therefore submitted to the jury corresponding with the offenses of which the defendant may be found guilty, and a form for acquittal, and the jury were instructed that it may sign the one it finds to agree with its findings under the law as given.
This ease was reversed by the circuit court; we are unable to ascertain upon what grounds it was reversed but we are of the opinion that it was properly reversed for the reasons stated in this opinion.
We have pondered and studied the statutes, their history, and the decisions of our own state. But after all, the history, meaning construction and fundamental philosophy of the acts made criminal, are the things that count and which are of interest to the inquiring mind. Unusual consideration has been given the question and we are inclined to digress and philosophize upon it.
In view of the fact that the statutes have defined the three kinds of first degree murder clearly and specifically; in view also of the fact that by separate statute the act of inflicting a mortal wound by a revolver or deadly weapon purposely and maliciously has been constituted second degree murder, it certainly is not to be concluded by process of reasoning that because by another section the statute has provided that the same act which is penalized as second degree murder when committed in perpetration of robbery, can be held to be severable and penalized as second degree murder. It takes the two acts combined — the robbery and killing — to constitute murder. It is physically impossible to kill another under such conditions and be guilty of murder in the second degree. And when that appears clearly from the evidence, why permit the jury to speculate upon the uncertain philosophy Whether a defendant can ever be held guilty of second degree murder or manslaughter, where the evidence shows the man to have been killed and robbed in the same act and by the same person. Can anything be more absurd than to charge the jury on second degree murder and manslaughter, and submit verdicts in a case like the one at bar ? Why rack one’s brain to conceive of conditions and circumstances under which a man charged with this class of homicide can be held for second degree or man *85 slaughter, in view of the fact that the three classes of homicide are as different from each other as day is from night.
It was never intended that this class of homicide should be inclusive of lesser degrees. If we continue to speculate on this question we will get back into the mysteries of common law homicide; or into a filed of mystery as dubious as was common law murder cruel. It may be just as bad to continue the unreasonable and unjustifiable practice of charging the jury and sending verdicts to it, regardless of evidence and law. It is a question of power under Section 13692, judges have said; and the questions and forms of verdicts, for all theoretically included verdicts must go to the jury. No; it is a question whether courts will continue to abdicate their power, and continue to fail to perform their duty.
The act of killing in perpetrating robbery, and of purposely and maliciously inflicting a mortal wound with a deadly weapon causing death, are each separate distinct composite acts, selected for special penalization. The act of killing in perpetrating robbery is specially selected and penalized by death because of its greater atrocity, than is the mere killing purposely and maliciously which is second degree murder. It is true that the more henious act or crime of killing when perpetrating robbery embraces the physical act of killing with a deadly weapon from which act intent and malice may be inferred or otherwise shown to make it second degree murder.
But the mere fact that it embraces the act of killing with a deadly weapon committed while committing first degree murder when robbing another, can never justify the separation of the lesser act that makes the composite crime of first degree murder when perpetrating robbery, and punish such minor act by assessing the minor penalty.
Under an indictment charging murder in the first degree in perpetration of a robbery it is impossible ever to legally render a verdict for second degree murder; if the accused did not kill while robbing another he is not guilty of the crime.
In formulating rules of law — by statute or decision — it is to be assumed that the same are designated for a definite purpose, *86 to cover a particular state of facts. "When the state presents an indictment, it is to be assumed that if it charges one kind of murder, that the same will be drawn to fit the crime. If it is deliberate and premeditated murder, the indictment will so charge. Defendant will then be advised that the charge includes second degree and manslaughter. If it is murder in the commission of one of the felonies named, or of an attempt to commit the same, the accused is bound to know that he is charged with one specific crime which does not embrace mere “purposely and maliciously” killing (second degree) nor mere unlawful killing or killing without malice, or upon a sudden quarrel, or while engaged in the commission of an act made unlawful by statute (manslaughter). The charge may embrace acts common to other classes of first degree murder and other degrees thereof. It cannot be said, however, that killing another while robbing him is manslaughter because robbery is an unlawful act. If a burglar accidentally discharges a revolver and unintentionally kills an occupant of the house, can he be said to have killed another merely because he was committing an act of burglary made unlawful by statute. Such deduction is impossible because the word “purposely” qualifies the act of killing while committing burglary or robbery, and holds the accused to have purposely killed howsoever the killing may be done while perpetrating a felony.
Second degree murder falls within the class of purposely deliberate premeditated malicious killing. The elements of intent and malice of second degree are not embraced in a charge of first degree murder in the commission of a felony, as it is in the first class of premeditated murder.
The element of killing which is present in murder in committing robbery is a concomitant act precisely as is the act of a mere assault, and cannot operate as a mere charge of purposely and malicious hilling.
In philosophizing upon the subject it is interesting to note the fact that in many other jurisdictions an intent to kill is not regarded as an essential, the mere act of killing while perpetrating the felony being sufficient. This coincides with or harmonizes with the inherent nature of the act, but the grammatical con *87 struetion of our statute makes intent an essential. An intent is necessarily imputed to murder by poison, but does not harmonize so well with murder in commission of felony. By grammatical construction of Section 12400, it has been settled that the word “purposely” qualifies killing while perpetrating all felonies named in the statute.
Applying strict grammatical construction, we know that the words ‘ ‘ either of deliberate and premeditated malice ” in no wise qualifies the killing in commission of the several felonies, so that malice does not necessarily become part of this class of crime by virtue of Section 12400.
Therefore does not the exclusive language of Section 12400 defining this class of first degree murder eliminate malice as an essential element thereof ? Concededly the ordinary definition of malice might appropriately characterize this class of murder. But that is besides the question, it being an axiomatic doctrine that we can only resort to the statute as the exclusive source of the elements of our statutory crimes. The word malice does not appear in the charge given in this ease.
It is familiar history that there was no distinction between the different kinds of murder at common law; that motives of humanity led us to separate it into degrees. It is well known that the first statute making such division and reducing the law in respect thereto to statutory form was passed in Pennsylvania in 1794. Murder in the first degree by means of poison, lying in wait, or committed in the perpetration of, or attempt to perpetrate any arson, rape, robbery, or burglary was thén made into a class of first degree, in addition to ‘ ‘ any other kind of willful, deliberate and premeditated killing. ’ ’ This original provision in different language found its way into other states. Mr. Bishop upon review of the statutes in different states called attention to the difference prevailing, stating that the divergencies are not so great as to render all consideration of them unprofitable, nor are their terms so absolutely alike, he states, as to make of one an entirely reliable guide to another. Bishop Cr. L. Sec. 725 A. 1.
The universal judicial expression from early times was that murder perpetrated by any of the means mentioned in the statute, *88 or in the commission of any of the enumerated felonies, constituted murder in the first degree, without further evidence of willfulness, deliberation and premeditation. Decisions in our state have voiced this conception. In many states it was considered to matter not whether the murder was designed, but in Ohio the phraseology of the language was held to render purpose and intent essential.
• Pursuing this question further along the line of proper construction and interpretation, and considering all the several statutes in reference to homicide as a composite entirety, it seems rationally sound to conclude that first degree murder while in commission of any of the several felonies named, was designed to exclude any lesser degrees such as second degree and manslaughter — the constituent elements of which are wholly inconsistent with intentional killing while perpetrating a felony.
The language of the first class of first degree murder is of such import that it was designed to charge a special class of murder committed purposely and with deliberate and premeditated malice, which could not be constructed under any circumstances or conditions to have reference to any other class of first degree, the definition of which is descriptive of a class of homicide committed in such radically different manner as not to have the slightest reference to murder committed while perpetrating any felony. Murder while committing any of the felonies is held to be intentionally committed, but the statute does not specify that it shall be maliciously committed. The statute specifically makes malice an element of second degree, and also of the first class of first degree, but of none other.
Manslaughter is committed without malice, upon a sudden quarrel upon adequate provocation, or while committing some unlawful act made so by statute, so that there is no common element with manslaughter in murder in commission of a felony, unless it be without malice.
The definition of murder while committing any one of the felonies excludes the definition of either murder in the second degree or manslaughter. This seems a clear and very simple but significant proposition.
*89 Section 13692 simply means that when under any indictment for first degree murder, the charge as made embraces within its terms the essential elements of either second degree or manslaughter, and that when the evidence produced by the state fails to prove any essential of the higher degree, but does tend to prove a loiuer degree, or there is conflict in the evidence concerning the guilt of the accused of the particular degree, then an instruction should be given concerning the degrees and form of verdict sub'mitted. But a charge of robbery and murder committed in perpetrating a felony embraces neither purposely or malicious killing, nor killing without malice or upon adequate provocation which reduces the grade; nothing can ever reduce the grade of murder in committing robbery.
. Murder can become second degree only when the killing is done maliciously, but without deliberation or premeditation, and not by any of the specified methods or in the commission of the enumerated felonies. State v. Decklotts, 19 Iowa, 447; State v. Moore, 25 Ia., 128; People v. Doyell, 48 Cal., 85; Caldwell v. State, 41 Tex., 86; 18 Am. Dec. Note, p. 774-787.
The clear purpose of Section 13692 seems always to have been manifest; all crimes and criminal procedure’is statutory, nothing depending upon the common law, except as incorporated in statutes; the definitions of every crime, and every step of procedure had to be expressly provided for by specific provision. Realizing that in trials of murder in the first degree in some cases the evidence may fail to prove the major charge, but may prove a lesser charge, it was necessary to make provision for such eases so as to enable the jury to perform its duty under the law and the evidence. Hence Section 13692. That the purpose of the statute shall be accomplished, it is incumbent upon the court to perform its function by giving accurate instructions based upon the evidence; if particular instruction be given the jury which is not based upon any evidence whatsoever; if for example this court had charged the jury in this case on the .subject of second degree murder, or manslaughter, it would have given instructions upon crimes not involved in the case under the evidence adduced, and would have placed it within the power of the jury to have *90 speculated — or worse than that to have compromised their views, or to have exercised the powers of clemency which the constitution confers upon the Chief Executive, by commuting the crime.
The intent of the statute, even under the provisions when Bobbins v. State was decided, according to our conception was not intended to confer unlimited power, or power without direction of the court, but rather the purpose was to grant enabling power— to give the jury the power to render a verdict upon any degree embraced in the charge when there was any evidence tending to prove any one degree of crime embraced therein, or when there was conflict to the evidence as to the degree of guilt. If there is no evidence tending to prove any lesser degrees, then the power exclusively vests in the court to direct the jury upon the law arising upon the evidence.
Whether there is no evidence even tending to prove the charge of an indictment is a question of law for the court. If there is no evidence tending to prove the charge, then the jury has no power to find a verdict upon that particular charge, and the court is without power to submit such question to the jury, thus enabling it to speculate, or bring about a miscarriage of justice.
Justice in criminal law and procedure contemplates the rendition of a verdict according to the rights of the state, as well as those of defendant.
The view apparently taken by some is that whether the jury may or may not find an accused guilty of either degree of crime embraced in the indictment, is a mere matter of statutory power— regardless of the evidence; that the court must in all cases submit the degrees embraced in the indictment to the jury without regard to the state of the evidence. An admission to this effect seems to have been made by Frick, J., in the majority opinion in State v. Menhinnay, 43 Utah, 135, Ann. Cas. 1916, 537, 544 as follows:
“Under our statute a murder so committed (in perpetrating a robbery) constitutes murder in the first degree and legally can constitute nothing else. True, a jury in any homicide case has the poiuer to disregard the evidence, and may find one who is clearly guilty of first degree murder of manslaughter or acquit *91 him. From this it is assumed that, because a jury may do this, therefore a court must submit all the degrees of murder, and thus give the jury the right to pass upon the several degrees of murder. This contention loses sight of the legal principle involved in the statute * * * (Murder perpetrating robbery) which does not segregate murder committed in the perpetration of " ® * robbery into degrees. While it is true that under our jurisprudence a jury has the power, with or without reason, either to reduce the degree of crime, if it be divided into degrees, or acquit the accused, it does not follow that a court is bound in effect to charge that they may disregard the law, the evidence, and their oath in arriving at a verdict. Neither is it correct to say that, by not submitting the question of second degree murder in a case where the hilling was perpetrated in an attempt to rob, the court thereby coerces the jury to find the accused guilty of murder in the first degree.
‘ ‘ Whether such might be the effect under our statute depends upon the evidence. If the evidence justifies a finding that the murder was committed in the perpetration of or attempt to perpetrate a robbery, it is the duty of the court to charge that, if they find beyond a reasonable doubt that the murder was committed in the perpetration of or attempt to perpetrate a robbery they should find the accused guilty of first degree murder, and if the evidence, as in the case at bar, does not justify the jury under their oaths to find otherwise, the cotirt need not submit the question of second degree murder at all. In such a ease, in merely charging on first degree murder the court does not, as is contended, withhold anything from the jury, but simply charges the law. It is the law and the evidence that fixes the degree of the offense, and when the facts are not in dispute and clearly show that the murder was committed as aforesaid, the jury have neither the legal nor moral right to refuse to follow the law and in effect amend or repeal the statute. Of course, if the jury refuses to be bound by either law or fact, a court is powerless, but the court is not required to partake of the wrong and in effect suggest to the jury that they may do what the law does not sanction.
“We are of the opinion that there was absolutely no evidence * * * which would have justified a finding by the jury other than that the murder was committed in an attempt to perpetrate a robbery.”
We could not have a better illustration of the soundness of the charge given in the case at bar in view of the evidence) as *92 well as the view here taken concerning the construction and meaning of Sections 11400 and 13692, than the Utah case. The charge in the Utah decision was murder in an attempt to rob. The court refused to charge the jury with respect to second degree murder. The indictment was framed upon the theory of deliberate and premeditated murder. Upon that view as well as upon the statute which makes nrnrder in perpetrating or attempt to perpetrate murder first degree murder, the case was submitted to the jury. The opinion also stated:
“Where there was some evidence in this case from which the jury could have found a deliberate and premeditated murder, yet the jury would not have been justified in finding that the murder was not committed in an attempt to perpetrate a robbery, and upon the latter question there is not even room for doubt. ’ ’
The opinion also stated that whether there was any evidence in support of any essential fact is as much a question of law in a homicide ease as in any other; that the court must not abdicate its prerogatives. This is the sound view; while the Utah opinion admitted that the statute dividing crimes into degrees enabled the jury to find in the lesser degree, it expressed the view that such statute should not apply to a murder committed in perpetration of or attempt to perpetrate a robbery,
“because a murder so committed is not divisible into degrees. In such a charge * * * the killing was either committed in the perpetration of or attempt to perpetrate robbery or it was not.”
In the separate opinion of McCarty, C. J., it was stated:
“The evidence * * * shows that the burglary, attempted robbery, amd homicide were so connected and interwoven, each ivith the other two, that they constituted one transaction. * # * The killing of E teas * * * by the undisputed evidence, murder in the first degree. * * * I am unable to conceive of a state of facts or circumstances * * * under which a murder committed in the perpetration of or attempt to perpetrate any of the felonies mentioned * * * would or could be less than murder in the first degree.”
*93 The last quoted matter is the keynote of the decision. It has been the view' of the writer in the case at bar. Trial judges should not longer regard the purpose of Section 13692 as conferring unlimited power, and instructions should no longer be given which will in effect confer such power, and permit the jury to disregard both evidence and law.
The evidence of the dying declaration was that the two men robbed decedent; that although the latter begged the robber to take all he had but to save his life, nevertheless one of them immediately shot him, and drove away in his taxicab; they stole his car as well as all his personal belongings.
In Colorado it is said:
“ It is well settled that in a prosecution for murder where there is no evidence from which a jury would be justified in finding the defendant guilty of manslaughter a trial judge is not required to instruct upon that grade of homicide.” Demato v. People, 49 Colo., 111 Pac. 703; Ann. Cas., 1912 A. 783; Mow v. People, 31 Colo., 351; Crawford v. People, 12 Colo., 290; Carpenter v. People, 31 Colo., 284.
In Territory v. Nichols, 3 N. M., 111, it was held that the charge must be given to all the degrees to which the evidence is applicable, but not when there is an entire absence of evidence as to any degree.
In State v. Thorne, 41 Utah 414; Ann. Cas., 1915 D, p. 90, a request that the jury be charged that defendant might be found guilty of either murder in the first degree, or second degree, or not guilty was refused, the reviewing court stating:
“The court’s charge was proper. There was no evidence upon which the jury could base a verdict of second degree murder. Under the undisputed evidence and under his own admissions appellant was guilty of murder in the first degree, or he was not guilty at all.”
In Dietz v. State, 149 Wis., 462, 136 N. W. 166, Ann. Cas. 1913 C. (1912), the charge was murder in the first degree of which defendant was convicted. The error complained of was in not charging the jury that there might be a conviction for *94 murder in the second degree, or of some of the lesser degrees of manslaughter, insteead of submitting only the question of murder in the first degree.
“Here, again,” said the court, “it would be sufficient to say that no instructions submitting the lesser degrees of crime were requested, but we prefer to place our ruling upon the broader ground that under the evidence there was no room for any intermediate finding. The defendant was either guilty of murder in the first degree or he was innocent.”
In People v. Milton, 145 Cal., 169, the court held that the class of homicide committed in the perpetration of or attempt to perpetrate robbery, etc., the crime is murder in the first degree and none other. In Milo v. State, 56 Tex., Cr. 196, 127 S. W., 1025, the court in considering the statute making killing while committing a felony murder in the first degree stated: “This statute eliminates murder in the second degree in homicides of this character.” “When the Code said murder committed in a certain way was murder in the first degree, the law makes it so, and a jury by its verdict co.uld not find otherwise. ’ ’ Essery v. State, 72 Tex. Cr., 414.
In State v. Spivey, 151 N. C. 676, 65 S. E., 995, the evidence showed that the homicide was committed by lying in wait or in an attempt to commit arson. The instruction eliminating second degree was approved, the court stating:
“There was no evidence from which the jury could have found murder in the second degree or manslaughter. * * * Where the evidence tends to prove that a murder * * * was done by means of poison, etc., * í? * or which has been committed in perpetration or attempt to perpetrate any m'son * * * robbery, etc., and where there is no evidence and where no inference can fairly be deduced from the evidence of or tendimg to prove a murder in the second degree or manslaughter, the trial judge should instruct the jury that it is their duty to render a verdict of ‘guilty of murder in the first degree’ if they are satisfied beyond a reasonable doubt, or of ‘not guilty.’ If, however, there is any evidence or if any inference can be fairly deduced * # tending to show one of the lower grades *95 of murder, it is then the duty of the trial judge * * * to submit that view to the jury. It becomes the duty of the trial judge to determine, in the first instance, if there is any evidence, etc., * * * tending to prove one of the lower grades of mtirder.”
In State v. Zeller, 77 N. J. L., 619, 78 Atl., 498, it was claimed the court erred in taking from the jury the function imposed by statute to determine the degree of guilt, by eliminating second degree. All the evidence tended to show murder committed in the perpetration of robbery. The evidence disclosed that if the accused was guilty at all, he was guilty of murder committed in perpetration of robbery. It was held that the charge was therefore entirely proper.
In People v. Schleiman, 197 N. Y. 383, 18 Ann. Cas. 588, 90 N. E. 950, 27 L. R. A. N. S. 1075, the indictment contained a count for deliberate and premeditated murder, as well as a count for murder committed while engaged in committing burglary. The defendant Was tried on the count for homicide while committing the burglary. The evidence tended to prove murder while committing a burglary and tending oward nothing else. It was held that the jury could not find defendant guilty of any lesser degree, and that there was no error in refusing to charge in reference to the various degrees, and instructing the jury to find the defendant guilty of the first degree or not guilty.
In State v. Curtis, 93 Kansas, 743, 1915, the information charged murder in the first degree perpetrated in an attempt to rob, and also murder in the second degree independent of such felony. The jury were instructed: “That under the information in this case * * * the defendant is either guilty of murder in the first degree or he is not guilty. ’ ’ Held:
“Upon the charge of murder in the first degree apart from the allegation of an attempt to rob, the jury should have been instructed upon the lesser degrees if there was any evidence, although slight, tending to show any lesser offense included in the principle charge. Second ; the evidence was sufficient to require instruction upon the lesser degrees.”
*96 It appears further in the opinion that where the general charge is made of first degree murder the court is bound to instruct the jury concerning the lesser degrees to which the evidence applies; by this is meant where the charge is of deliberate and premeditated murder. Then it is stated:
“But where the evidence shows beyond question that a defendant is either guilty of murder in the'first degree or innocent, it is unnecessary upon the general charge of murder in the first degree to instruct the jury upon any other degree * * * if there is even slight evidence tending to prove a lesser degree it is erroneous to restrict the jury from finding a verdict accordingly. ’ ’
In Commonwealth v. Romezzo, 235 Pa. St., 407, the court stated:
“Where it appears that the killing was committed for the purpose of robbery the court commits no error in telling the jury that if this was so it was murder in the fir»t degre, and that it was their duty to so find.”
The charge was to the effect that the jury had the right to say that the defendant was guilty of murder in the first or in the second degree. “But, if you find that there was wilful, deliberate and premeditated murder with malice * * * or that the murder was perpetrated in the commission of * * robbery * * then there is no room for murder in the second degree, and you should so find.”
In. conclusion it may be appropriately stated that because of the importance of the question involved, unusual care and consideration have been given this case. However, the views of the court have not been arrived at merely upon a consideration of this case; it has been a growing conviction after much consideration in the trial of a number of first degree murder cases that there has been an erroneous mode of practice not within the spirit and clear intent of our laws, statutory and precedent, and that such view should at some time be cleared up. It never can be if the trial judges continue in the old path.
*97 The length of this opinion, and the copious citation, quotations of decisions, and discussions seems justified by -reason of the status of our own decisions upon the subject. The statement made by Lincoln concerning the preacher whose sermons were long, that when he commenced writing he was too lazy to stop, may be appropriately applied to the writer. But we have written in “self defense.”
In respect to the claim in the amended motion for new trial that the admonitions given at 9:15 p. m., urging the jury to agree, the court will let 'the record speak for itself. Such admonition is not to be regarded as a charge or an instruction to the jury in the technical sense. It was only designed to urge the jury to make a reasonable effort to arrive at a verdict. The endeavor was to be equally considerate of both parties to the action — the state and defendant. It is well settled practice in criminal procedure that a court may properly state to a jury that the case should be settled by a verdict if reasonably possible, because of the expense to the county and the equally importance to, and interest of a defendant in having the case come to an end by a verdict; and so long as the court does not make such admonitions stronger on the one side than on the other no error can be committed. And it was likewise the duty of the court not in anywise to coerce the jury in arriving at its verdict. We think from a careful reading of this admonition it will not appear to be in violation of law. We have had experience in other important cases concerning this question and had given it much careful consideration. (See Ohio Civil Trials, Sec. 673.) In the legislative bribery cases a jury was kept out for three days, and the jury was admonished from time to time to make a reasonable effort to agree, and the case was affirmed.
In reference to the time book of the ITulse factory and the error complained of by the refusal of the court to admit the time book in evidence, it may be appropriate to state the grounds of this conclusion. It was not such a -book that- could be handed to the jury from which alone without extrinsic evidence they could determine a fact. The witness Henderson, the time keeper, *98 stated that he could not tell whether defendant was at work at the factory on the date in question from his independent recollection. He produced a time book, and upon examination and offer of introduction it appears that the book itself from the manner in which it was kept would not precisely disclose the fact whether defendant had worked on the date in question. The witness made certain explanations as to the manner in which the time was kept. On suggestion of court the witness was permitted to use this book to refresh his recollection; he was allowed to state the method by which he took and kept the time, to relate how he made the rounds to see whether the men working were on duty. It was fully developed by this witness that the book in question showed that Bandy was working on the date in question. The jury had before it the claim of fact just as fully and perhaps more clearly by the evidence as it was introduced than it would have had by making an examination of the book itself had it been admitted.
In respect to the errors complained 'of in the admission of the keys, etc.; as one would sit in the trial of the case noticing the developments made by the evidence the whole conduct of the accused after the commission of the crime becomes important. As the testimony was brought out concerning his conduct at the room which he occupied and its contents and what was done with certain things of which he had possession, it seemed to the court that the disposition of the bunch of keys and of the revolver in the manner shown by the evidence became competent and relevant touching his conduct after the crime. Of course, the keys alone would have no special relation to the manner in which the killing was committed; still the defendant’s actions, his possessions and course of conduct subsequent to the murder and until he was apprehended was all considered as competent and relevant. The defendant sought to lay bare his whole life; and his 'life while he occupied the room where he was arrested, where the keys and revolver were found, wore important items in his life. It does not seem therefore that the introduction of the keys standing as it does in the record constitutes prejudicial error.
The motion for a new trial is overruled.